WILLIAM HALL *v.* GEORGE W. DEWEY AND ANDREW DAVIS.

A party having a prior seizin, and possession, of less than fifteen years standing, if not abandoned, may, upon being disseized by another, having no prior or better right, lawfully re-enter upon the latter.

Adverse possession is a question of fact for the jury to find.

Where a landlord requests another to deliver a message to his tenant, to call and make arrangements about the rent, and the tenant declared to such messenger that he would pay no rent, and claimed to own the premises ;—Held, that, without proof to the landlord of such claim, the declaration of the tenant was not constructive notice to the landlord.

A tenant at will, by claiming to hold in his own right, and apprising the landlord of such claim, may so far throw off his tenancy, as to commence a possession adverse to his landlord.

The operation of this principle is simply to impose upon the landlord the necessity of protecting his interest, after learning the hostile intentions of his tenant, by that measure of diligence which the statute of limitations has prescribed.

For other purposes, the original relation between the parties has its legal effect, upon their respective rights.

THIS was an action of trespass for breaking and entering the plaintiff's close, and cutting and carrying away the plaintiff's oats, on the 15th of August, 1835, and came to this court upon the following bill of exceptions. The trespass was committed upon a piece of land containing about ten acres, which the plaintiff claims as a part of lot No. 17, of the first division laid to the original right of Nathan Willard, jr. On the trial of the case in the County Court, the plaintiff read in evidence the original charter of the town of Rutland, dated 7th September, 1761, by which it appeared that Nathan Willard, jr. was an original proprietor of said town, and then showed a regular chain of conveyances from said Willard to Roswell Hopkins ;—then a power of attorney from Roswell Hopkins to Cephas Smith, jr. dated 2d February, 1805 ;—next a deed from Roswell Hopkins, by Cephas Smith, his attorney, to Samuel Mattocks, dated 12th November, 1814, of lot No. 17, of the first division of the right of Nathan Willard, jr.;—then a deed from Samuel Mattocks to Noadiah Moore, conveying the same lot, dated 30th October, 1822 ;—next a deed from Noadiah Moore to William Elliott, of the same lot, dated 11th April 1831 ;—then a deed from William Elliott to Reuben R. Thrall, dated 24th December, 1831 ; and next a deed from Reuben R. Thrall to the plaintiff of the same lot, dated 24th November, 1834. The plaintiff then introduced the plan of the town of Rutland to show

the particular location and boundaries of lot No. 17, of the first division laid to the right of Nathan Willard, jr., which plan was proved to have been made and acquiesced in for more than thirty years, and included the land in question in lot No. 17.

The plaintiff then proved that he went into possession of the lot about the first of April, 1835, and ploughed the land, sowed the oats, and built the fences. The defendants admitted the taking of the oats. And the plaintiff admitted that the defendants acted under the direction and authority of James Porter. The defendants then introduced a deed from Ezekiel Beebe to James Porter, dated 4th March, 1835, conveying all his interest in the land upon which the oats grew. The defendants then proved that in 1808, Cephas Smith, jr. procured General Hendee to survey the Kelley lot, so called, being lot No. 17, of the first division of Nathan Willard, jr.; that said Hendee surveyed said lot and drew a plan, leaving out the land in dispute ; that said Smith was in feeble health and it did not appear that said Smith was present at the time the survey was made ; but the corners were shown by one Nathan Pratt, since deceased, who usually acted as agent for said Smith ;—that in 1819, the said Hendee re-surveyed a part of said lot, to wit, the north and east lines, and made another plan of said lot, from the minutes of the first survey, for Samuel Mattocks, who then resided at Middlebury, but was present at the time.

The defendants then introduced evidence tending to prove that Ezekiel Beebe, in 1825, with the knowledge and consent of William Elliott and John L. Beebe, his son and son in law, took possession of the ten acres in controversy, not as part of the Kelly lot, but as undivided land or a vacant lot ;—that he enclosed it with a brush fence, marked, and continued in possession of it, from the year 1825, until March 4, 1835, when he sold and deeded it to James Porter, and while he was in possession, viz. in the summer of 1832, the said Thrall sent word by Silas D. Willis to said Bebee to call on said Thrall, and make arrangements in relation to the rent of said premises, and, on that occasion, the said Bebee declared to the said Willis that he should pay no rent, and claimed that he owned the premises.

The plaintiff then read a deed from Nathan Pratt to Isaac Gage, dated 14th February, 1810, conveying the

the land in dispute, and from Isaac Gage to Cephas Smith, jr. dated 9th March 1810, conveying the same land. The said Smith was at that time the owner of the Kelly lot, the apparent title of which was in Roswell Hopkins, and claimed the land now in dispute, as a part of the Kelly lot. It appeared in evidence that the said Nathan Pratt had, about 40 years since, claimed the 10 acre piece now in dispute as his, and cut pine trees thereon, and that he had the care of No. 17, or the Kelly lot, but claimed that that piece was no part of the Kelley lot;—that, at the time Gage deeded to Smith, as before mentioned, Smith claimed that the land in dispute was part of the Kelley lot, and it was agreed between the said Smith and the said Pratt, that Nathan Pratt, jr. should execute his note to the said Smith for fifteen dollars, which should be kept in the hands of one Fenton, and if it should be found that the land belonged to the Kelly lot, the said note should be paid to Smith ; but, otherwise, it should be given up ;—and that the note lay about two years, when it was given up to the said Pratt, without any payment, by order of said Smith. It also appeared in evidence that John L. Beebe and William Elliott took possession of the Kelly lot in the fall of 1825, built a house on it and removed into it ; that Ezekiel Bebce removed into the house with them the next March ; that, at first, they did not claim the disputed lot, a part of which was at that time occupied and claimed by George W. Dewey, one of the defendants, and another part was then occupied and claimed by William Wright, both of whom abandoned their possession about that time. It also appeared in evidence that Moses Lester, Esq. surveyed the Kelley lot for Elliott and Beebe, after they purchased, and in that survey he included the disputed lot, at which time the said Elliott and Beebe, and Ezekiel Bebee, all said that the lot was a part of the Kelley lot, and divided fences and built fences on the south line of said disputed piece ; and that afterwards the said Elliott and Beebe said, while they owned the Kelley lot, that the disputed piece was not a part of the Kelley lot, but ought to belong to it, and they would give sixty dollars for it. It also appeared that Ezekiel Beebe paid the said Lester one dollar for running the said south line, and that Elliott and John L. Beebe objected to paying for running that line, on the ground that their father, the said Ezekiel, ought to pay it, as they employed the said Lester to run that

Rutland,
January,
1838.

Hall
v.
Dewey, et al.

line in behalf of the said Ezekiel. The plaintiff then offered to prove that William Elliott and John L. Beebe bought the Kelly lot of Noadiah Moore, which was then a wild lot, and took a bond for a deed and went into possession, in February 1825, and Ezekiel Beebe moved into the house with them, which house was on the Kelly lot but not on the disputed land; that John L. Beebe, sold to Elliott in November, 1830; that John L. Beebe and William Elliott took possession of the disputed land in the spring of 1827, claiming it as a part of the Kelley lot; that Ezekiel Beebe, at that time, claimed that it was a part of the Kelley lot, and said he was in possession under Elliot and Beebe. The plaintiff then offered a lease from Reuben R. Thrall to William Elliot from 24th December, 1831, to 24th December, 1832. The plaintiff contended that if Ezekiel Beebe went into possession of the premises under Elliot and Beebe, and continued to occupy under the said Thrall, he was precluded from setting up a title as against them, and could not claim adversely to Thrall's title, so as to render the deed from him to the plaintiff void under the statute of 1807. The plaintiff further contended, that, inasmuch as Beebe's claim of title, as made to Willis, was not carried home to the knowledge of Thrall, he could not be considered as holding adversely to Thrall, so as to avoid the deed from Thrall to the plaintiff. The County Court decided that the possession of Beebe, from the time he declared to Willis, the agent of Thrall, that he would pay no rent, and claimed title to the premises, which was in November, 1832, was from that period adverse to Thrall, and that nothing passed to the plaintiff by virtue of the deed from Thrall to him, dated November, 1834. The County Court further decided, that, as the land in dispute was not surveyed by Smith, who caused the survey to be made of the Kelley lot in 1808—as a part of the Kelley lot—as he gave up the note to Pratt before mentioned, and as Mattocks, who re-surveyed the lot in 1819, did not include the piece in dispute, that piece was not to be considered a part of the Kelley lot, and, inasmuch as Beebe was in actual possession of the lot in question, in the year 1825, with the knowledge and consent of John L. Beebe and William Elliot, intending to hold the same by possession, but not as part of the Kelley lot, and continued in possession from the year 1825, claiming it at times as his own, and claiming adversely to the title of the plaintiff from the year 1832, not-

withstanding he may have said at other times that it was part of the Kelley lot, the testimony offered was irrelevant and inadmissible and rejected the testimony. They also decided that the title of Beebe, from the time he gave the notice to Willis before mentioned, was adverse, and rendered the deed from Thrall to the plaintiff void under the statute of 1807, and that notice to the agent, sent by Thrall to Beebe, was notice to him. Whereupon the plaintiff became nonsuited, and excepted to the several decisions of the court before mentioned, with liberty to move the Supreme Court to set the nonsuit aside.

*R. R. Thrall* and *E. N. Briggs*, for plaintiff.

I. The possession of a tenant at will is no disseizin of the landlord. *Reed* v. *Shepley*, 6 Vt. R. 602. *Bowker* v. *Walker*, 1 do. 18. Buller's N. P. 24. 1 Caines' Cases, 394. 3 Johns. R. 499. 5 Cowen's R. 129. 7 do. 637. 4 Johns. R. 211 and 230. 4 Cowen's R. 587. Adams on Eject. 59 and note. 3 Johns. R. 223. 1 Caines' R. 444. 7 Johns. R. 186. 7 do. 358. *Selleck* v. *Starr*, 6 Vt. R. 194.

II. The county court erred in deciding that the land in dispute was not a part of the Kelly lot. That fact should have been left to the jury.

III. Beebe's notice to Willis of the adverse claim of the former was no notice to Thrall.

*Phineas Smith* and *A. L. Brown*, for defendants.

I. Thrall's deed to plaintiff was void under the statute of 1807.

II. The land in dispute is no part of lot No. 17.

III. Porter, under whom the defendants claim, having the prior possession, the entry of the plaintiff was tortious. 1 Chitty's Pl. 190, note (k.) 2 Saunders' R. 111. 1 East's R. 246.

The opinion of the Court was delivered by

ROYCE, J.—I shall first consider the decision of the county court, excluding the ten acres in dispute from lot No. 17. That decision was necessarily fatal to the plaintiff's right of recovery, since his evidence of title was confined to that lot; and his actual possession at the time of the trespass complained of, if without title, could not avail him against the prior seisin and possession of Porter, under whom the defendants acted, though Porter's possession had not ripened into a perfect title. It has long been settled in this state, that ejectment may be sustained upon a prior seizin and posses-

sion of less than fifteen years standing, if not abandoned, against any one who has not a better right. And from this it results, that the party thus disseized by another, having no prior or better right, may lawfully re-enter upon the latter. As against him he has the · right of possession, and may assert it by entry or by process of ejectment. The question then arises, was it proper for the court to decide, that the *locus in quo* was not a part of lot No. 17, or should the evidence have been submitted to the jury ? The evidence relating to this point was not wholly upon one side, since the plan of the town, which the case says had been made and acquiesced in for more than thirty years, showed the disputed tract to be part of No. 17. It must, therefore, have been the *character* of the evidence produced by the defendant, which influenced the court in making the decision. That evidence proved,—that in 1808, Cephas Smith, Jr. being agent of Hopkins, and probably the real owner of lot No. 17, caused a survey of the lot to be made, in which the tract in question was not included ;—that a similar survey was in part made by Mattocks, the grantee of Smith, in 1819 ;— and that Smith surrendered the note taken of young Pratt for the price of the ten acres, from a belief that they did not belong to lot No. 17. These facts should doubtless operate as admissions by Smith and Mattocks, whilst owners, as to the extent of their boundaries. And, though such admissions are evidence against the party making them, and those who claim under him, and will be entitled to greater or less weight according to circumstances, they are not, in general, conclusive. In this instance it does not appear that the defendants, or those with whom they are connected, were induced to take any steps in relation to the property, upon the faith of these admissions. It is also apparent that the force of this evidence is considerably weakened by other facts appearing in the case. The first survey was probably made in the absence of Smith, and certainly in the presence, and under the influence, of the elder Pratt, who was interes_ted against him. Smith's claims and declarations were not uniformly in support of that survey, but at times in opposition to it. The last survey was only of two lines of the lot, and the surveyor was governed in making his plan by his minutes of the former survey. In our opinion, the evidence

upon this question furnished no legal conclusion either way, and it should have been left to the jury to find the fact.

The county court also decided, that the possession of Ezekiel Beebe, after his declarations made to Willis in the summer of 1832, was to be considered as adverse to Thrall, who then held the title of lot No. 17, and that Thrall's subsequent deed to the plaintiff was, therefore, void under the statute of 1807. It appears from the case, that in answer to this part of the defence, the plaintiff offered testimony tending to prove, that Ezekiel Beebe entered into possession of the ten acres, and occupied the same, as tenant at will to John L. Beebe and William Elliot, from whom Thrall derived title. This evidence was rejected, on the ground that Thrall, in legal contemplation, was affected with notice of Ezekiel Beebe's adverse holding; in other words, that the declarations made to Willis, the agent of Thrall, operated as notice to Thrall himself. These decisions evidently proceeded on the ground, that a tenant at will, by claiming to hold in his own right, and apprising the landlord of such claim, may so far throw off his tenancy as to commence a possession adverse to his landlord. This doctrine, if not expressly recognized by the ancient authorities, is certainly sustained by the recent American decisions. It was the point in judgment before the Supreme Court of the United States, in *Willison* v. *Watkins*, 3 Peters'. R. 43. With the proper qualifications it is a doctrine well suited to the genius of our institutions, and to the rapidly improving condition of real estate in this country. The operation of the principle is simply to impose upon the landlord the necessity of protecting his interest, after learning the hostile claims of his tenant, by that measure of diligence which the statute of limitations has prescribed. For other purposes, the original relation between the parties, has its legal effect upon their respective rights. The tenant is still restrained from disputing the title under which he entered, nor can he augment the burden of proof upon the other side, by denying his tenancy. And the cases of *Bowker* v. *Walker*, and *Tuttle* v. *Reynolds*, 1 Vt. R. 18 and 80, are sufficient to show, that the rights, subsisting between the original parties to such a tenancy, continue to subsist between their grantees.

Whether such an adverse holding, by a former tenant, should operate to avoid a subsequent conveyance by the

landlord, or his grantee, is perhaps a new question. But since it is regarded as strictly an adverse possession, and as such, will eventually confer a title, if continued, it must have the effect which the statute has given to all such possessions.

It was held in *Stevens* v. *Dewing*, 2 Aik. R. 112, that in order to avoid a deed under the act of 1807, the evidence relied upon to prove an adverse possession should be submitted to the jury. But the case does not show, that in this instance the plaintiff insisted upon that course, nor has the point been made in argument.

Aside from this consideration, the decision of the county court, as to the character of Ezekiel Beebe's possession, and its influence upon the plaintiff's title, was correct. And their subsequent decision, rejecting evidence of his former tenancy, was also correct, provided the declarations to Willis, legally operated as notice to Thrall, of Beebe's adverse claim. This is the only remaining subject of inquiry. Whether notice to an agent is at the same time notice to his principal, must depend on the character and extent of the agency. Had Willis been commissioned to receive rent of Beebe, to treat with him respecting a lease of the land, or, in short, to transact any business with him on the subject, requiring a report to be made to Thrall, the views of the county court would have been clearly right. But Willis was employed only to deliver a verbal message from Thrall, that Beebe must call upon him and make arrangements about the rent. This was a message which might as well have been sent by one person as another. It does not appear that an answer was expected through Willis, or that any report of Beebe's declarations was ever made to Thrall. We, therefore, consider that Willis was not such an agent in this matter, that the declarations made to him can be regarded as constructive notice to Thrall.

The result is, that the evidence of Beebe's tenancy should have been admitted. And had the tenancy been proved, the conveyance from Thrall to the plaintiff must have taken effect, and entitled the plaintiff to a verdict.

Judgment of the county court reversed, and new trial granted.