## WILLIAM  Y.  RIPLEY  v.  HARVEY  YALE.

[Same Case, 18 Vt. 220.*]

Whether one, who receives the possession of land from another, is estopped from claiming title to it must depend upon the inquiry, whether the claim attempted to be set up is consistent with the contract under which the possession was taken.

Where one enters into possession of land under a parol contract of purchase, and pays a portion of the purchase money in advance, and is, by the terms of the contract, to receive a deed of the premises upon furnishing certain required security for the remainder of the purchase money, and the security is offered, but the vendor refuses to deed, there is nothing in the nature

*And see *Ripley* v. *Yale et al.*, 16 Vt. 257.

of the contract, which would preclude the purchaser from claiming to hold the premises adverse to the vendor; and such possession, if open and exclusive, accompanied by claim of title, will avoid a deed of the premises, executed by the vendor to a third person subsequent to the performance of the contract on the part of the purchaser.

And even if the purchaser could be considered as tenant at will to the vendor until the completion of the contract, yet if he offer to perform the contract on his part, and the vendor refuse to deed, and the purchaser thereupon give notice to the vendor that he shall "*hold on to the land*," the possession of the purchaser becomes adverse and will avoid a deed subsequently executed by the vendor to a third person.

EJECTMENT for land in Middlebury. Plea, the general issue, and trial by jury, June Term, 1846,—BENNETT, J., presiding.

On trial the plaintiff gave in evidence a deed of the premises from Russel Bly to himself, dated August 11, 1841. It appeared that Bly, on the eighth day of February, 1839, made a parol agreement with the defendant for the sale of the premises, estimated at about thirty acres; and the defendant was to take them at the estimate, or have them measured, at his election; and when he had made his election, and had furnished security for the payment of the balance of the purchase money, remaining unpaid, he was to receive from Bly a conveyance of the land by two deeds, one to the defendant and the other to his brother, conveying the land in such proportions as the defendant might direct; that the defendant paid to Bly one hundred dollars in advance, towards the purchase of the land, and then, by the consent and direction of Bly, entered into possession of the premises as his own; that afterwards, and previous to the execution of the deed from Bly to the plaintiff, the defendant elected to take the land at the estimate, without measurement, and tendered to Bly adequate security for the payment of the balance of the purchase money, and requested Bly to execute deeds according to the terms of the agreement; that Bly declined to do so, but executed and tendered to the defendant one deed of the entire premises, conveying them to the defendant,—which deed the defendant refused to accept; and that the defendant then said to Bly, "that he should hold on upon the land."

It appeared, that the defendant had been in the exclusive possession of the premises from February, 1839, to the time of trial; cut-

ting wood and timber thereon from year to year, clearing some part, mowing the grass, and selling timber from the premises, claiming to be the owner thereof; and that it was generally known, that the defendant was in possession of the premises. It also appeared, that the plaintiff, immediately after he received his deed from Bly, gave notice of this to the defendant, and demanded the surrender of the possession ; and that the defendant declined so to do, claiming the land as his own, and denying the right of Bly to convey it to the plaintiff.

The court having intimated, that, in their opinion, the foregoing facts constituted in law an adverse possession, in the defendant, of the premises, at the time of the execution of the deed from Bly to the plaintiff, so as to avoid that deed, the plaintiff became nonsuit, with leave to move for a rule to set aside the nonsuit.

The plaintiff having moved for a rule to set aside the nonsuit, the motion was overruled and judgment entered for the defendant. Exceptions by plaintiff.

*Briggs & Williams* and *P. Starr* for plaintiff.

The defendant was a tenant at will to Bly, at the time Bly conveyed to the plaintiff. Rev. St. 314, § 21. In *Greeno* v. *Munson et al.*, 9 Vt. 37, it was held, that a tenant cannot dispute the title of his landlord ; and this doctrine is extended to one who enters into possession of land under a contract of purchase. *Bowker* v. *Walker*, 1 Vt. 19. *Jackson et al.*, v. *Bard*, 4 Johns. 230. *Tuttle* v. *Reynolds*, 1 Vt. 80. *Hodson* v. *Sharp*, 10 East 352.. Instruments which do not purport to convey, as leases, contracts, &c., cannot be the foundation of an adverse possession. Adams on Eject. 57, 468. 2 Phil. Ev. 201. *Norris* v. *Smith*, 7 Cow. 717. *Low et al.* v. *Reynolds*, 1 Caine 444. To determine whether a possession is adverse, it is only necessary to inquire whether it can be the constructive possession of the legal proprietor. If the adverse possessor claims the title of the true owner as his own and founds his possession upon it, his possession will not be deemed adverse to the owner. Adams on Eject. 48, 470. *Sinsabaugh et al.* v. *Sears*, 10 Johns. 435. *Jackson* v. *Stephens*, 16 Johns. 116. *Carson et al.* v. *Cains et al.*, 20 Johns. 301. The defendant claims under the parol contract with Bly, admits Bly's title, and that he holds under

it; consequently he cannot hold adversely to Bly, who is the plaintiff's grantor. 5 Cow. 92. *Knox* v. *Hooker*, 12 Mass. 327. *Williams* v. *Watkins*, 3 Pet. 47. *Ripley* v. *Yale*, 18 Vt. 220.

*C. Linsley* and *E. D. Barber* for defendant.

One who enters into possession of land as a purchaser can in no sense be considered as entering under him of whom he purchases. Neither the vendor nor the purchaser so understood it. It cannot vary the case, whether there has been a conveyance, or whether the conveyance is defective. The purchaser, having paid the purchase money and taken possession, has acquired a right capable of being enforced; the property is equitably his, and he can enforce the perfection of the legal evidence of title. He does, it is true, at the moment of purchase, acknowledge the title of him of whom he purchases; but he enters into possession, because, by the purchase, the property purchased has become his. He has taken the property purchased, but has not all the evidence required by law to show his purchase; but his acts upon the land purchased are precisely such as they would be, if his paper title were perfect. Such a possession is adverse. Whoever occupies land, taking all the profits to his own use, and lays out money in improvements, making no acknowledgment of a superior, must be considered as holding in his own right and adversely to all others. *Hall* v. *Dewey*, 10 Vt. 593. *Fisher* v. *Prosper*, Cowp. 208. *Robinson* v. *Douglass*, 2 Aik. 367. *French* v. *Pierce*, 8 Conn. 443, 446. *Mitchell* v. *Walker*, 2 Aik. 266.

The opinion of the court was delivered by

HALL, J. The statute, under which the deed from Bly to the plaintiff is sought to be avoided, is founded on the equitable consideration, to which the interest of a party in the possession of land with a claim of right is supposed to be entitled. It provides, chap. 60, sec. 26, that a deed shall be absolutely void and of no effect to convey lands, "if, at the time of the delivery thereof, such lands shall be in the *actual possession* of a person, claiming the same by possession, or *in any other way*, adverse to the grantor." There can be no doubt, that the language of this statute embraces every case of the adverse possession of land under a *claim* of title, without regard

to the character of the possession in other respects, and without ref-
erence to the validity or invalidity of the title. The naked posses-
sion, under a claim of right, is assumed to furnish sufficient *prima
facie* evidence of title, to justify the legislature in extending their
protection to the possessor against the claims of any other person,
than him whose right may have been invaded. It enacts, in sub-
stance, that no adventurer in land titles shall come into a court of
law to disturb such possession,—that the party alone, who has been
injured, shall enforce his claim of title against the possessor.

The bill of exceptions states, that Yale, the defendant, had been in
the exclusve possession of the land from February, *1839,* to the time
of trial, cutting wood and timber thereon from year to year, clearing
some part, mowing the grass, and selling timber from the premises,
claiming to be the owner thereof. This would clearly seem to be a
possession and claim adverse to the whole world, and, under ordina-
ry circumstances, would be sufficient to avoid any deed of another,
attempting to transfer the title.

It is, however, insisted, that the relation of the defendant to the
grantor was such as to preclude him from taking advantage of this
statute; and whether he stand in such relation is the principal ques-
tion in the case.

There can be no doubt, but that the *claim* of the defendant was
sufficiently adverse, provided he could be permitted to make it. He
claimed the whole title. The case does not therefore fall within the
principle of *Selleck* v. *Starr*, 6 Vt. 194, where it was held, that the
possession and claim of a less estate under the grantor was not such
an adverse claim, as rendered the deed void, the claim being subor-
dinate to and consistent with the superior title of the grantor. Is
there any rule of law, that estops the defendant, in this case, from
making an adverse claim to the whole title?

There are, no doubt, certain circumstances, under which a party
taking the possession of land from another would not be permitted
to set up an adverse claim to it. These circumstances usually exist
between landlord and tenant. The doctrine is, indeed, well estab-
lished and deeply rooted, both in this state and in England, that
neither a tenant, nor those claiming by him, can, in general, be al-
lowed to dispute the title of the landlord. Upon what principle is
this doctrine founded? The estoppel of the tenant by the ancient

common law seems to have rested solely on the indenture of lease between the parties. The tenant was estopped by his deed from denying the title of his landlord; but if the lease were by deed poll of the lessor merely, the lessee might plead that the lessor had nothing in the land. Litt. Sec. 58. 1 Co Lit. 47 *b*.

The doctrine, now so fully admitted, that a tenant and those claiming under him are estopped, without deed, appears to be of modern origin. In *Doe* v. *Smythe*, 4 M. & S. 347, in 1816, DAMPIER, J., said, "It has been ruled often, that neither the tenant, nor any one claiming by him, can dispute the landlord's title. This, I believe, has been the rule for the last twenty five years; and I remember it was so laid down by BULLER, J., on the western circuit." This comparatively modern doctrine cannot rest on the mere fact, that the tenant derived his possession from the lessor. A possession may often be adverse to him from whom it is derived. It was held in *Mitchel* v. *Walker*, 2 Aik. 266, that the use of water to turn a mill for fifteen years, accompanied by a claim of right, would give the defendant a title to the easement, though the right was claimed to have been derived from the plaintiff. The grantee in fee derives both his title and possession from the grantor; but his possession is nevertheless adverse. So also is the possession of one claiming under a defective deed, though the title do not pass.

In Massachusetts it is held, that an entry upon land under a parol purchase, payment having been made and the party entitled to a deed, is adverse, and that a possession under such entry, if continued twenty years, will make the possessor a good title;—and also, that the claim of one, entering on land by parol gift, may be adverse to the donor, and that such possession, continued for twenty years, bars the donor's right of entry and of action. *Barker* v. *Salmon*, 2 Metc. 32. *Brown* v. *King et al.*, 5 Metc. 173. *Sumner* v. *Stevens*, 6 Metc. 337. In all these cases the adverse claim is consistent with the terms, upon which the party took possession.

But the lessee of land takes the possession under an agreement, either express, or necessarily implied, that he will hold the land, during the continuance of the lease, in subordination to the right of the lessor, and that he will surrender to him the possession at the end of the term. He cannot, therefore, be allowed to controvert

21

the title of the lessor, or set up against him the title of another, without violating, by a manifest breach of faith, the agreement under which the possession was committed to him.   The doctrine, then, that a tenant shall not be permitted to deny his landlord's title, would seem to rest on the common principle applicable to estoppels *in pais,* that an admission of a party, upon which another has been induced to act, and by which he has acquired an advantage to himself, is of so important and solemn a character, that he shall not afterwards be allowed to controvert it,—that it shall be conclusive *evidence against* him.   The tenant having obtained the possession of land, which he would not otherwise have had, by means of an agreement to surrender it, he shall not be permitted to hold the land in violation of that agreement.   See *Blight's Lessee* v. *Rochester,* 7 Wheat. 535.

I can conceive of no other principle, upon which one, who receives the possession of land from another, should be estopped from claiming title to it, but upon the ground that to make such claim would be a violation of the agreement under which the possession was obtained.   If this be correct, the *inquiry in all such cases* will be, is the claim, attempted to be set up, consistent with the contract of possession?   If it be, the claim may well be made.   If it be in violation of such contract, the party is estopped from making it.

In the present case the defendant went into possession under an agreement to purchase, having paid forty *per cent.* of the purchase money, and, on furnishing certain specified security for the residue, he was to have a deed of the land.   The object of the contract was the passing of the whole title.   The possession was taken under that expectation.   If the defendant performed the contract on his part, there was no agreement, either express or implied, that he should surrender the possession.   On the contrary, on such performance, he was to have a perfect title in fee;—his possession was to be perpetual.   He did perform the contract on his part.   He furnished the required security, but Bly refused to deed.   But for this refusal, the defendant would now be the owner of the land.   There can be no breach of faith in his claiming precisely what, by the terms of the contract, he was to have.   There is, therefore, nothing in the relation in which the defendant stood to Bly, under the contract of purchase, performed as it was on his part, to prevent him from setting up a claim of title in himself, adverse to Bly.

The claim of the defendant is not, that Bly had no title at the time of the contract, but that, by the contract, the title has passed to him. It may be true, and doubtless is, that the defendant's claim of title is so far unfounded, that it could not prevail in an action of ejectment brought by Bly against him.   By the contract of purchase he admitted that Bly was the owner of the land, and would now be estopped from denying his original title.   He is in the situation of one claiming under a defective deed, or by parol gift.   His title is imperfect; but there is nothing in his condition to prevent him from claiming title in himself; and such claim, with the possession, if continued for fifteen years, would bar the title of the original owner.

If the defendant is to be treated as having been. a tenant at will to Bly on his original entry upon the land, as is claimed on the part of the plaintiff, his tenancy must be considered as having been so far thrown off by his notice to Bly that he should hold the land, as to enable him from that time to commence a possession adverse to his landlord, upon the doctrine decided in *Hall* v. *Dewey*, 10 Vt. 593.   This notice appears to have been given prior to Bly's deed to the plaintiff; and, upon every view of the case, we think the deed must be held void under the statute, by reason of the adverse possession of the defendant at the time of its delivery.

It may be observed, that there seems a peculiar propriety in giving effect to the statute in this case.   The defendant, although he has acquired no legal title, has certainly some equitable claim upon the land,—a claim which a court of chancery might, perhaps, enforce by a decree for a specific performance of the contract.   If the deed of Bly passes the title to the plaintiff, the defendant's remedy in equity is either destroyed, or greatly embarrassed; and there are therefore strong reasons, why the title to the land should be adjudicated between the parties to the original transaction, and why Bly should not be permitted to transfer his side of the controversy to another.

The decision now made does not conflict with that of the court at the former hearing of this case.   18 Vt. 220.   The bill of exceptions did not then show the terms of the contract of purchase by the defendant, nor any performance of it by him.   It was then treated as an unperformed executory contract.   Nor was there any notice proved to Bly, of the adverse claim of the defendant.   The defend-

ant being considered as holding in subservience to Bly, it was then held, upon such view of the case, as it would be now, that his possession could not be adverse.

The result is, that the ruling of the county court, against the motion of the plaintiff to set aside the nonsuit, is affirmed.