Buckmaster et al. *v.* Needham et al.

JOHN BUCKMASTER AND NAPOLEON B. SMITH *v.* HORACE NEEDHAM, BENJAMIN F. NEEDHAM, LEVI NEEDHAM, LUCY NEEDHAM, HORACE ALDRICH, AND CORDELIA ALDRICH.

[IN CHANCERY.] .

Where a father conveyed to his son, by deed, one third of his farm, upon which the grantor and grantee then both resided, with a condition thereto annexed, that the deed should be void, in case the grantee should refuse to pay to the grantor thirty dollars each year, if the grantor should call for the same, it was held, that the condition should not be so construed, as to permit the annual payments to be consolidated and demanded together, after the lapse of several years, but that each sum must have been demanded by itself, and at or about the close of the year, for which it was claimed, and that any sum, not so demanded, was waived, or relinquished;—and it not appearing, that any such demand as the case required, was ever in fact made, it was held, that there had been no forfeiture of the estate by the grantee, by reason of the non-payment.

And where it appeared, in such case, that the grantee, after residing upon the farm with the grantor for several years, had removed and left the grantor in possession of the whole farm, and afterwards, and while the grantor was thus in possession, executed a mortgage deed to the orators of one third of the farm, and the reason or purpose of the removal did not appear, it was held, that the court would not presume, that the grantor was so in possession claiming title to the whole farm adversely to the grantee, as to avoid the mortgage thus executed, and that, although the possession may have been intended to be adverse to the grantee, yet that this would not affect the validity of the mortgage, unless the mortgagees, at the time of the conveyance to them, had notice of such adverse possession.

The ordinary presumption is, that a sole possession by one tenant in common is held in the right of both tenants.

APPEAL from the court of chancery. On the fifteenth day of February, 1828, Benjamin Needham, Jr., conveyed to his son, Horace Needham, by deed, for the consideration, as expressed in the deed, of $1000,00, one third of his farm, on which his son then resided with him, with a condition annexed to the deed, in these words ;—" The condition of the above deed is such, that whereas ' the said Benjamin Needham, Jr., the grantor, hath made the above ' deed to the said Horace Needham for the express purpose of se- ' curing to the said Horace Needham the right of the soil above de-

'scribed in said deed, after the decease of the said Benjamin Need-
'ham, Jr., and his wife, Alice Needham, and the said Horace
' Needham is to have the full possession and enjoyment of the land
' described above, by paying annually to the said Benjamin the sum
' of $30,00, or to Alice Needham, wife of the said Benjamin, if
' she should survive the said Benjamin, if either shall call for the
' same, as the case may be: Now if the said Horace Needham,
' his heirs, executors, or administrators, shall well and truly pay or
' cause to be paid to the said Benjamin, or Alice, each and every
' year, as long as either of them shall live, the aforesaid sum of
' $30,00, if they, or either of them, shall request the same, then
' the above deed is good and valid,—otherwise void." Horace
Needham continued to reside upon the farm, with his father, until
the year 1835, when he removed therefrom, leaving his father in
sole possession of the whole farm,—which he retained until his de-
cease, which was in February, 1839. On the thirtieth day of
March, 1837, and while Benjamin Needham, Jr., was in possession
of the whole farm, Horace Needham executed and delivered to the
orators a mortgage deed of one third of the farm, to secure his in-
debtedness to them, therein described. Alice Needham, the wife
of Benjamin Needham, Jr., named in the condition of the deed to
Horace Needham, died some years previous to her husband, and he
afterwards married the defendant Lucy Needham, who survived
him. The other defendants were heirs of his estate. After the de-
cease of Benjamin Needham, Jr., the commissioners, appointed by
the probate court to set out the dower of the widow, Lucy Need-
ham, severed one third of the farm, as the property of Horace
Needham, and set out the dower in the residue of the farm. The
orators prayed, that the defendants might be decreed to pay to them
the amount due upon their mortgage, and, in default thereof, be
ordered to surrender the possession of the mortgaged premises and
be foreclosed of all equity of redemption therein. The substance
of the testimony taken and filed by the parties is sufficiently stated
in the opinion delivered by the court.

The master, to whom it was referred to ascertain and report,
whether any sum, and how much, was due from Horace Needham
to his father, at the time of his father's decease, reported, that he
decided, that, in order to make the said Horace chargeable for the

sum of $30,00 a year, for the use of the premises, that sum should have been annually demanded of him,—and that, no such demand being proved, there was nothing due from the said Horace to the said Benjamin at the time of the said Benjamin's decease.   The master also reported, that the sum due in equity from Horace Needham to the orators was $1589,76, and taxed the orator's costs at $147,10.   To this report the defendants filed exceptions; but the court of chancery accepted the report, and decreed, that the representatives and heirs of Benjamin Needham, Jr., be perpetually enjoined from making any claim to the mortgaged premises, and that they surrender the possession of the premises to the orators forthwith, and that Horace Needham pay to the orators the sum reported by the master to be due in equity, and the costs, on or before the first Tuesday in September, 1849, or be foreclosed of all equity of redemption in the premises.   From this decree the defendants appealed.

*Thrall & Smith* and *Ormsbee* for orators.

It is the obvious intention of the grantor, Benjamin Needham, Jr., in the conveyance to his son, to secure to him the ultimate fee in the land, or, in other words, the right of soil, beyond a contingency.   It would seem, also, from the whole case, that there was a valuable consideration for this deed.   At all events, it was such a deed, as the father had a right to make, and did make.   Before the grantee, or his assigns, could be subjected to the payment of the sum of $30,00 annually, reserved by this deed, a clear and specific demand for it must have been made; and in order to keep the claim alive from year to year, the demand must have been made from year to year, or at least it must have been so specifically made, that there could be no mistake on the part of the grantee, or his assigns, that such payment had been demanded.   The testimony wholly fails to prove any such demand.   Whether there was any sum due, and, if any, how much, were questions of fact, referred to the master; and his decision is conclusive.

---

---

*S. H. Hodges* and *S. Foot* for defendants.

The deed, under which the complainants claim, is void, having been executed while Benjamin Needham, Jr., was in adverse possession.

When a grant is voluntary, subjecting the grantee to no expense, nor liability, and is conditioned to be void upon the non-payment of money, equity will not relieve against a forfeiture occasioned by a refusal to pay the money after express demand. Such is the present case. The grant cost Horace Needham nothing; and he was subjected to no liability by it. It being a deed poll, covenant would not lie upon it; Platt on Cov. 10, 54; 2 Steph. N. P. 1068; neither would debt, nor any personal action; 3 Bl. Com. 232. *Ognel's Case,* 4 Co. 48 *b.* *Webb* v. *Jiggs,* 4 M. & S. 113. The only remedy for recovering the stipulated payment was to enforce the forfeiture.

The stipulated payment was repeatedly demanded. The evidence shows this directly in several instances. It is true, these were after the possession was relinquished; but the condition required the payment, whether in possession, or not. And the rent was never paid.

It is true, cases may be found of relief being granted after a wilful refusal to pay money, where the party was still liable to pay a debt and the security was collateral,—as in the instance of bonds and mortgages; or where he had paid a consideration, or became liable for one,—as in that of leases, which are usually by indenture, binding the lessee, or purchase by a fine,—or in the instance of devises, where the intent of the testator governs,—though this is only where there is no limitation over. But no case parallel to the present can be found. To grant the relief sought would render it necessary to give it, where the grantee had utterly refused to fulfil the condition until the death of the annuitant had satisfied him, whether it would be to his advantage. 2 Story's Eq. 1315, 1323. *Reynolds* v. *Pitt,* 19 Ves. 134. *Hill* v. *Barclay,* 18 Ves. 56. *Lloyd* v. *Collett,* 4 Ves. 689. *Bracebridge* v. *Buckley,* 2 Price 200. *Rolfe* v. *Harris,* 2 Price 212, note.

The opinion of the court was delivered by

Royce, Ch. J.   The orators brought their bill to foreclose a mortgage executed to them, in 1837, by the defendant Horace Needham.   And, to entitle them to all the relief sought against the other defendants, it was necessary to show, that Horace Needham had an estate in one third of the farm at the time of giving the mortgage.   If he then had no title, the orators could only claim to hold, by operation of the covenants in the mortgage deed, the interest which, in that case, must afterwards have come to him by inheritance from Benjamin Needham, his father; and that interest was less than the one which the deed purported to convey.   It is contended by the other defendants, that, at the date of the mortgage, he had no interest whatever in the farm; but that his estate, acquired under the deed from Benjamin Needham, in 1828, had been forfeited and determined, in consequence of his neglect and refusal to make the annual payments to said Benjamin, according to the condition annexed to that conveyance.   There is some apparent incongruity between the different parts of that condition; and perhaps it might well be questioned, whether the non-payment of the annual thirty dollars was really intended, under any circumstances, to affect the estate of Horace after the decease of his parents.   But such a question has not been raised by counsel, and this branch of the case will be determined with reference only to the concluding part of the condition.   That professed to avoid the deed entirely, if any of the annual payments should be called for, and not made. And to make good this ground in the defence, it must be shown, that a cause of forfeiture occurred, and that the forfeiture was actually claimed and taken.

It is not at present deemed important to inquire, whether the deed was founded upon an actual consideration of value, beyond the annual payments provided for in the condition, or whether, aside from those payments, it was a voluntary conveyance.   Such an inquiry may sometimes be important, when a party comes into a court of equity to seek relief against a forfeiture; but such was not the admitted or apparent object of the bill in this case.

It is evident, that the payments mentioned were not expected to be annually needed, as means of support for the parents, and possibly they were not relied upon at all for that purpose.   And hence

the annual thirty dollars was not made payable absolutely, but only in the event of being called for ;—like a limited amount of spending money, to be supplied at stated periods to aged parents, in case they shall see fit to require it. Neither should the condition be so construed, as to permit the sums to be consolidated, and demanded together after the lapse of several years. It was required, that each sum should be demanded by itself, and at or about the close of the year, for which it was claimed. And any sum not so demanded was waived, or relinquished. Nothing in the nature of a debt would arise without the proper demand. At the same time, a sum duly demanded, and not paid, should doubtless be treated in equity as a lien upon the estate, if the forfeiture were not enforced. But it was found by the master, and must have been so considered by the chancellor, that none of these annual sums had been regularly demanded. And although there can be no doubt, that Benjamin Needham repeatedly declared they had not been paid, and pronounced the title of Horace worthless for that reason, yet we do not find it proved by the evidence before us, that any such demand, as the case required, was ever in fact made. And since a valid cause of forfeiture could only arise upon demand and non-payment, it follows, that no such cause was established. This ground of defence must therefore be overruled; and it will be immaterial, so far as the title of Horace was concerned, whether Benjamin Needham ever designed, or attempted, to enforce a forfeiture.

The remaining ground of defence is, that Benjamin Needham was in possession of the entire farm, holding adversely to Horace, when the mortgage was executed; and that it was thereby rendered void under the statute. The evidence to *make out* such an adverse possession at that time is derived from the fact, that Horace had removed from the farm some two years before, leaving the whole possession with Benjamin,—and from various declarations of the latter, in effect denying that Horace retained any title, or interest, in the farm. It is claimed, that the removal should be treated as an absolute abandonment on the part of Horace. But the testimony is silent as to the cause and purpose of that act; and a sole possession by one tenant in common is not presumed to be adverse to the co-tenant. The ordinary presumption is, that such a possession is held in the right of both tenants. And although this presumption

Buckmaster et al. *v.* Needham et al.

may be rebutted by evidence, yet, to render void a deed of the tenant out of possession to a third person, such tenant, or his grantee, should be affected with notice of the adverse holding, at the time of the conveyance. The doctrine on this point, as established between landlord and tenant, is obviously applicable to cases like the present. But most, if not all, of the hostile declarations of Benjamin Needham, which are relied on as having characterized his possession, appear to have been made after the orators received their mortgage. And hence, although the possession may have been intended to be adverse to the title of Horace, there was not seasonable and sufficient notice of it to him or the orators to avoid the mortgage. *Hall* v. *Dewey et al.*, 10 Vt. 593.

The decree of the chancellor is affirmed.