Dickman, J.
The controlling questions to be determined in the case under- consideration are, whether Joseph Wallace acquired any estate or interest in the lands described in the original petition, by the deeds to himself and his wife Nancy Wallace,, from Renjamin, Jacob and Joseph Uhrich, and Benjamin and Adam Ross; and whether the Farmers’ and Merchants’ National Bank, by virtue of the mortgage executed to it by Joseph Wallace, acquired a lien upon or interest in any portion of such lands. Nancy Wallace, defendant in error, at the death of her father Jacob Uhrich, sr. intestate, became entitled as one of his heirs at law, to an undivided seventh part in fee of all the lands of which he died seized, and of which the lands described in the petition constituted a part. As tenant in common, clothed with full power of alienation, she was competent to vest by deed in the other heirs, or in strangers, an absolute title to all her undivided interest in the lands of *163 the intestate. And the same power of alienation which she possessed, was vested in those heirs who had by quit-claim deeds conveyed to her and Joseph Wallace all their interest in the lands described in the original petition. White v. Sayre, 2 Ohio, 110; Treon v. Emerick, 6 Ohio, 391; Prentiss’ case, 7 Ohio, 2 pt. 129; Dennison v. Foster, 9 Ohio 126.
There was an agreement that the heirs at law of the intestate should make an amicable partition among themselves, of all the lands of which he died seized. The quit-claim deeds by the defendant in error to her brothers and other heirs at law, doubtless, were designed as the consideration for the deeds from them to herself and husband jointly. As between him and herself, apart from any rights inuring to him jure uxoris, he would hold in trust for her the legal title to an undivided moiety of the interest conveyed to them jointly, equivalent to thirteen forty-second parts of the land in the original petition described. As between himself, however, and a bona fide purchaser for a valuable consideration, without notice, the record of the deeds would show him the unqualified owner of a* legal estate in an undivided moiety, with all the rights incident to such ownership. But the record would not-bring home to .any one, notice of any latent equity of the wife independent of her rights as a joint grantee with her husband in the deeds executed to them.
The bank, at no time prior to the commencement of the original action, had any knowledge or notice of any claim or interest of Nancy Wallace in the lands in controversy, adverse to the title of Joseph Wallace as shown by the deeds to him and his wife; nor had the bank at that time, any notice or knowledge whatever, of any fraud or mistake in the insertion of the name of Joseph Wallace in the déeds or either of them; and had no knowledge whatever, of the manner of the acquisition of such lands by Nancy and Joseph Wallace, other than what was shown by the records of those deeds. Under such circumstances, the bank in dealing with Joseph Wallace and taking from him the mortgage, was justified in relying upon the evidence furnished by the records. The object of the registry acts, as observed by a leading text writer, is to furnish *164 the best and most easily accessible evidence of the titles to real estate, so that purchasers may be informed of prior deeds and incumbrances; and having availed themselves of this source of information, may purchase in safety, provided they do so without knowledge, information or suggestions from other facts, of some antecedent conveyance or equitable claim.
It is contended that the defendant in error was in'possession of the land with her husband before and at the time of executing the mortgage to the bank, and that such possession was notice to the mortgagee of her actual rights and interests. But her possession under the quit-claim deeds to herself and husband was not exclusive, or of a character to give information that she was an occupant asserting dominion over the property under claim of right or authority exclusive of property-rights in her husband, and therefore did not operate as notice to the mortgagee. Ranney v. Hardy, 43 Ohio St. 157. An essential feature of the possession which is set up as notice to a subsequent purchaser is, that it must be exclusive, at least so far as such subsequent purchaser’s grantor is concerned. This principle is illustrated in Buckmaster v. Needham, 22 Vt. 617. In that case, a father conveyed to his son, upon certain conditions, an undivided one-third of a farm, which was at the time occupied by them as tenants in common. .The grantee, after residing upon the farm with the grantor for several years, removed and left the grantor in possession of the whole farm, and afterward, and while the grantor Avas thus in possession, executed a mortgage deed of one-third of the farm, and the reason and purpose of the removal did not appear. It Avas held, that the court Avould not presume that the grantor was so in possession claiming title to the Avhole farm adversely to the grantee, as to avoid the mortgage thus executed; and that, although the possession may have been intended to be adverse to the grantee, yet, that this Avould not affect the validity of the mortgage, unless the mortgagees, at the time of the conveyance to them, had notice of such adverse possession. The decision rests upon the familiar principle that even a sole possession by one tenant in common, is not presumed to be adverse to the co-tenant; and that the ordinary presumption is that such a possession is held *165 in right of both tenants. “ To render the occupancy of the tenant in common adverse to those who have an undivided interest in the premises, there must be positive and overt acts connected with his exercise of ownership, such as will manifest an unmistakable intention on his part to exclude his co-tenants from the enjoyment of the property; otherwise his possession will be regarded not only as a declaration of his own proprietary rights, but those of his co-tenants as well.” Wade on Nonce, § 290, and cases cited.
Jnder the laws of Ohio, estates in joint tenancy do not exist, and the decisions have always been averse to estates by entireties. When land, therefore, is granted to husband and wife, they take by moities as tenants in common. The jus aaaresaendi,” say the court in Sergeant v. Steinberger, 2 Ohio, 305, “ is not founded in principles of natural justice, nor in any reasons of policy applicable to our society or institutions. But, on the contrary, it is adverse to the understandings, habits, and feelings of the people.” See also Wilson v. Fleming, 13 Ohio, 68. By the deeds, therefore, to Nancy and Joseph Wallace, she took as tenant in common with her husband, the legal title to one undivided moiety of the land or interest in land thereby conveyed. And as against the bank, whose only knowdedge of her right of possession was derived from the records, her possession of the granted premises, instead of being adverse to her husband, might be consistently referred to her possessory title of record acquired under the quit-claim deeds executed to her and her husband jointly.
Joseph Wallace, before and at the time of executing the mortgage, was in the actual possession of the premises therein described.. But it is claimed in behalf of Nancy Wallace, that the lands upon which she and 'her husband had resided continuously for several years at the time of the partition in 1854, came to her by title of descent from her father, and that therefore the possession of her husband should be referred to his marital rights, and not to the legal title acquired by him through the deeds to himself and wife. Granting that his marital rights had not been abridged by statute, and that he was in full possession and in the enjoyment of the rents and *166 profits by virtue of those rights, the bank could not then have been chargeable with notice by reason of possession by the wife. The rule, however, seems to be settled, that when a proprietor occupies premises under a title which rests in parol or is unrecorded, and the record shows a title under which he would be entitled to possession, his possession will be referred to his record title in preference to any other. The possession of land is notice of the' possessor’s title; but the registry by him of a particular title would restrict the generality of notice from possession. Woods v. Farmere, 7 Watts, 382. If the occupant relies on title by possession alone, it is open to a j)articular examination of the foundation of it. But when he makes the register the evidence of his title, and directs the attention of the public to a particular conveyance on record, he is presumed to have preferred the register as the best index of his title. In Plumer v. Robertson, 6 Serg. & Rawle, 179, the registered title was a mortgage, the other a covenant for a purchase which was susceptible of registration; it wras held, in accordance with the principle indicated, that as the possession was consistent with the registry, the subsequent purchaser was not bound to inquire further.
But although the bank may have received the mortgage from Joseph Wallace without notice or knowledge of any equities of his wife, the question arises, whether the bank is to be treated as a bona fide purchaser for a valuable consideration. It appears from the findings of fact, that on the 22nd of March, 1883, Joseph Wallace was indebted to the bank upon certain promissory notes then past due, and in consideration of an extension of time for the payment of his indebtedness and of a reduction of the rate of interest thereon from eight per cent, to six per cent., he made and delivered to the bank his new notes — the old notes having been delivered up and can-celled — and executed a mortgage on the premises conveyed to himself and wife jointly. We are of the opinion that the surrender and cancellation of the old notes, the extension of the time of payment of the debt, and the reduction of the rate of interest, were a sufficient consideration for the new notes, to secure which the mortgage was given, to entitle the bank to *167 protection as a purchaser for value. After the stipulation for further time of payment, and the reduction of the rate of interest, the mortgagee did not remain in the same situation as before, in respect to the pre-existing debt. In Lewis v. Anderson, 20 Ohio St. 281, the question how far a mortgagee, when the only consideration of the mortgage is a pre-existing debt of the mortgagor, must be regarded as a purchaser for value and entitled to the protection against prior liens afforded in equity to bona fide purchasers, was made to depend on whether the mortgagee was induced by virtue of the mortgage to change his condition in any manner. Day, J., says: “There was no consideration for the mortgage other than the pre-existing debt of the mortgagor; nor was the mortgagee induced thereby to change her condition in any manner.” In the well known case of Roxborough v. Messick, 6 Ohio St. 448, it was held that when the note of a third person is transferred, bona fide, before due, as collateral security, and for value, such as in consideration of a loan, or advancement, or a stipulation, express or implied, of further time to pay a preexisting debt, or the like, the holder of such collateral will be protected from infirmities affecting the instrument before it was thus transferred. In Gilchrist v. Gough, 63 Ind. 576, there was a question of priority of mortgages as between Gough and Hoffman. Howk, C. J., in delivering the opinion of the court observed: “ The appellee, Hoffman, must be regarded as a purchaser or mortgagee, for a valuable consideration, as to each' of his mortgages. For it appeared that, in each of the mortgages, the time of payment of the pre-existing indebtedness, to secure which the mortgage was given, had been extended for the term of one year, and this extension of time was sufficient to make him a purchaser or mortagee for a valuable consideration, as to each of the mortgages.”
The point is made that the object of the several quit-claim deeds executed interchangeably by the heirs at law to each other, being for the purpose of partition of the lands among themselves, no new title was created, and hence the deeds from the Uhrich brothers and the Ross brothers, while they vested an estate or interest in Nancy ’Wallace, conveyed none to *168 Joseph Wallace. It is true, as declared in Tabler v. Wiseman, 2 Ohio St. 207, that a proceeding in partition does not decide title or create any new title, and that it merely dissolves the tenancy in common, and leaves the title as it was, except to locate such rights as the parties may have in distinct portions of the premises, and to extinguish it in others. But it is only necessary to say, that while the heirs at law took by descent from Jacob Uhrich sr. the lands which they partitioned among themselves as tenants in common, Joseph Wallace took by purchase from Benjamin, Jacob and Joseph Uhrich, and Benjamin and Adam Ross.
Nancy Wallace acquired no title, independent of the quitclaim deeds of the heirs to each other, by virtue of any parol agreement to partition. She and her husband were first placed in possession' of the land described in the original petition by her father, and in 1854 the heirs at law agreed to divide the lands of their inheritance, and that agreement was followed at once by partition deeds. There was no parol partition, consummated by possession taken and held in accordance therewith and so long acquiesced in, as to call for the protection of a court of equity. And such possession as might be referable to the deeds of partition in which Joseph Wallace was made a grantee, could not take away the rights of the bank as a bona fide purchaser, for a valuable consideration, and without notice.
The mortgage was given to the bank by way of security for an indebtedness previously contracted and evidenced by now notes of the mortgagor. In taking such security, the bank did not violate the provisions of the national banking law in reference to holding real estate. Revised Statutes of the United States, section 5137; Shinkle v. First National Bank of Ripley, 22 Ohio St. 516; Allen v. First National Bank of Xenia, 23 Ohio St. 97; Upton v. National Bank of South Reading, 120 Mass. 153; Ornn v. Merchants’ National Bank, 16 Kan. 341; Morse on Banking, 2 Ed. 566.
Entertaining these views, the judgment of the district court, we think, •should be reversed.

Judgment reversed.