THE HAWAIIAN COMMERCIAL AND SUGAR COM-
PANY *vs.* THE WAIKAPU SUGAR COMPANY.

APPEAL FROM JUDD, C. J.

HEARING, MARCH 27, 1893.    DECISION, SEPTEMBER 19, 1893.

JUDD, C.J., BICKERTON, J., AND WHITING, CIRCUIT JUDGE.

(Mr. Justice Frear having been of counsel did not sit in
this case, and, by request, Whiting, Circuit Judge,
sat in his stead.)

Where one of two tenants in common entered into occupation of not
more than his proportion of the land owned in common and cultiva-
ted the same, the other tenant also occupying the rest of the land,
he is not liable to account to the other tenant for the profits made
thereupon from his own labor and capital, unless there be shown an
ouster or what is equivalent.

Two tenants is common of moieties occupied separate portions of the
common property, not denying each other's title, nor asking to be
let into the portion of the land occupied by the other; one tenant
asked the other for a settlement of the matter, but did not desire
partition: Held, not sufficient to constitute ouster.

OPINION OF THE COURT, BY JUDD, C.J.

This is a bill for partition of land and for an account.
Both parties agree that partition may be made, and the main
question before us is whether an account of issues and profits
shall be ordered. The bill is defended, by leave of the
Court, by George W. Macfarlane, a shareholder in and own-
ing one-half of the stock of the defendant corporation, the
other half of the stock being held by Claus Spreckels, as

trustee for the plaintiff corporation. Leave was given to Mr. Macfarlane to defend the suit as a shareholder, because it was impossible to procure corporate action in the defendant's corporation, the stock being held in equal proportions by Mr. Macfarlane and Mr. Spreckels, and the by-laws requiring the assent of three-fourths of the stock for corporate action, there being no directors.

We find the substantial facts of the case to be as follows: The plaintiff corporation owns in fee simple one undivided half of the land in question, which consists of a portion of the Ahupuaas of Waikapu and of Pulehunui, known together as the " Waikapu Commons," situated on the island of Maui. The area of the entire tract is about 15,000 acres. It consists mainly of the land on the isthmus between East and West Maui and has a chain of sand hills running through and dividing it. The land was formerly owned by one Henry Cornwell, who conveyed one undivided half thereof to Claus Spreckels on the 20th June, 1878, and Claus Spreckels conveyed the same interest to the plaintiff corporation on the 27th February, 1885.

Henry Cornwell conveyed fifteen-sixteenths of one-half of this land to George W. Macfarlane and Wm. H. Cornwell on the 1st March, 1877, and on the 9th June, 1879, he conveyed to the same parties the remaining one-sixteenth.

On the 4th December, 1883, G. W. Macfarlane and Wm. H. Cornwell conveyed their one undivided half of this land, thus acquired, to the defendant corporation, which has been incorporated on the 13th July of the same year. Until the year 1889 the shares of the defendant corporation were owned one-half by Wm. H. Cornwell and the other half by Geo. W. Macfarlane, except eighteen shares held by R. R. Hind, and which became the property of Mr. Macfarlane in March, 1889, who has since held them. Claus Spreckels bought in March, 1889, the shares of Wm. H. Cornwell and holds them for the plaintiff corporation; and at the date of the bill the stock of the defendant corporation was owned as above

stated, one-half by Mr. Macfarlane and one-half by the plaintiff corporation.

The property in question, held as tenants in common by the plaintiff and defendant corporations in moities, contains, as stated, about 15,000 acres of land, and it lies between the land and sugar works of these respective corporations, there being about 5,000 acres capable of growing sugar cane, if irrigated, on the side of the intersecting sand hills next to and adjoining the property and works of the plaintiff corporation and about 2,000 acres of similar character on the side of the sand hills adjoining the Waikapu plantation (defendant corporation.) No part of this land has water upon it or water rights with which sugar cane could be cultivated. As to the relative quality and value of the land on each side of the sand hills the testimony is conflicting, and it is not essential here to consider which part is the more valuable. When Mr. Spreckels purchased from Henry Cornwell he made a written agreement by which Mr. Cornwell was allowed to graze his cattle on the common property and on the Ahupuaa of Wailuku owned by Mr. Spreckels, for three and a half years free of charge ; and on the 29th August, 1881, Mr. Spreckels and Mr. H. Cornwell signed an agreement to divide and partition the lands owned by them in common on Maui and more especially the tract of land one undivided half of which was sold by Cornwell to Spreckels (the Waikapu Commons.)   But as Mr. H. Cornwell had, four years previous to this, sold his interest in this land to Messrs. G. W. Macfarlane and W. H. Cornwell, the agreement to divide was without binding effect upon the moiety now held by the defendant corporation.   The plaintiff, the Hawaiian Commercial and Sugar Company, a foreign corporation, had begun operations as a sugar plantation in this country previous to 1882, but the title to its property was, including the interest in the Waikapu Commons, in Claus Spreckels until 1885 when it was transferred to the corporation.   Mr. Spreckels had in 1882 a controlling interest in the corporation which continued to the date of this suit.   In April or May, 1882,

the employees of the Hawaiian Commercial and Sugar Company began to fence in and cultivate in sugar cane some land on the Waikapu Commons contiguous to its other cane fields in the land of Wailuku, and whether the title to one-half of the Waikapu Commons was then in Spreckels or his corporation is unessential, as it seems to us, since the corporation has adopted his acts in this respect and reaped the benefit of them and would not be allowed to plead want of title in it at the time of the occupation. Year by year the corporation took in more land, plowing it up, fencing and planting it field by field, until it had brought under cultivation in sugar cane, though not all at any one time, some forty-five hundred or five thousand acres of the common property. Upon this it brought water to irrigate the cane, bought from the Waihee Sugar Company and led from the Waihee river, and water from its own ditch leading from the district of Hamakua, and transported the cane when harvested to its own mills by means of railways. The plaintiff corporation fenced and maintained in fence the land which it cultivated. All that part of the Waikapu Commons on the Waikapu side of the sand hills and whatever was not under fence by the plaintiff corporation, being uninclosed, was used for grazing by the defendant corporation for its own and other persons' cattle, and this company also inclosed and cultivated in sugar-cane for a short time three parcels of land on the Waikapu side of the sand hills amounting to 107 acres and also inclosed, and has ever since used as a grazing paddock some 150 acres of land situated near Maalaea Bay. The defendant corporation has received some inconsiderable sums of money for pasturing animals on the uninclosed portions of the common estate, keeping an account thereof.

All this common produces a good growth of grass from winter rains which dries up in summer, but it is impossible to produce crops of sugar cane upon it without the use of water for its irrigation. W. H. Cornwell was manager of the Waikapu plantation in 1876, and has continued to be such manager up to the date of this suit, covering a period pre-

vious to and ever since its incorporation. In 1882, when the plaintiff began to plow, fence and cultivate across the line and in the common property, it was noticed by Mr. Cornwell, the manager of the Waikapu plantation, who notified his then partner, Mr. Macfarlane, of the fact. Mr. Macfarlane then applied to Mr. Spreckels for a "division" or "settlement," and he and Mr. Spreckels agreed to meet upon the land with a surveyor and ascertain if it could be divided. The parties met in July, 1882, went over a portion of the land together, but came to no agreement, Mr. Spreckels not expressly declining to divide, but dismissing the subject when approached by Mr. Macfarlane, saying "it was not an easy matter to divide the land."

Both parties to this suit say that they never at any time denied the title of the other in this land. Both Mr. Cornwell and Mr. Macfarlane testify that they never, at any time, asked to be allowed to use any portion of the common estate included within the fence of the plaintiff corporation and cultivated by it, and also that the defendant corporation's occupation of such portion of the land as it did occupy was never expressly interfered with or objected to by Mr. Spreckels or the plaintiff corporation.

There is no dispute as to the fact that each party, plaintiff and defendant, has used and occupied separate portions of the common estate from 1882 to the date of this suit, and each has used that portion of the land contiguous to the rest of its property. Thus far the facts of this case as outlined above are not disputed. We come now to the question of law whether to entitle a tenant in common to an account from his co-tenant an ouster, or what is equivalent, is essential to be proved as is contended by plaintiff or whether the tenant in possession is liable to be made to account to his co-tenant, even though no ouster be shown. But before entering upon this discussion it must be remembered that this is not the case of one tenant in common occupying the whole of the estate, for the occupation of the plaintiff though differing in character from the occupation of the defendant was of

not more than one-half of the area of the common estate. Nor is this a case where one tenant has rented out the land to third parties taking all the rents to his own use. But in the case before us the Hawaiian Commercial and Sugar Company has used its own capital and labor in cultivating sugar cane, having brought water upon the land, upon not more than one-half of the acreage of the common estate, and the Waikapu Sugar Company has been in possession and got what it could out of the remaining part.

An ouster is the wrongful dispossession or exclusion from real property of a party who is entitled to the possession. As between tenants in common where all are entitled to the possession, the intent with which possession is taken is material, for a stranger having no title may enter land and exercise acts of ownership over it and leave little room to doubt that he thereby intends to oust the true owner. But a co-tenant may enter the whole or any part of the common estate as he has legal right to do, and the presumption of law is, when nothing more is done, that he intends to do nothing beyond the assertion of his right. There must be stronger evidence to prove that one tenant has ousted another, than to prove that a person having no right to the possession has ousted the owner. The proof of ouster between tenants in common ought to be of the most satisfactory nature. The law will deem the possession amicable until the tenant out of possession has in some method been notified that it has become hostile. Freeman, Co–T. & Par., Sec. 221. In Vermont it is said that the acts relied upon to prove ouster between tenants in common must be such as would constitute ouster between landlord and tenant. *Buckmaster vs. Needham*, 22 Vt., 623.

In New York it is held that to establish an adverse possession by one tenant in common such as will effect the ouster of his co-tenant, notice in fact of the adverse claim is required, or unequivocal acts, open and public, making the possession so visible, hostile, exclusive and notorious that notice may be fairly presumed. *Culver vs. Rhodes*, 87 N. Y.,

348.   Undoubtedly exclusive possession of a part of the common property may be taken with the intent to oust his co-tenant of it.   *Carpenter vs. Webster*, 27 Cal., 525.   In this California case there had been a refusal by the tenant in possession to let the out-tenant in and occupy the sixty acres cultivated by the tenant in possession, which was only a small part of the whole estate.   The case of *Bennett vs. Clemence*, 6 Allen, 18, is not in point, for there the tenant in possession had erected a permanent structure which appropriated exclusively the entire land, and this was held to be evidence of ouster.   "Nothing is better settled than the rule that the mere occupation of premises owned in common, by one of the tenants in common, does not entitle his co-tenant to call him to account, or render him in any way liable to an action for the use and occupation of the estate.   Each owns the estate *per mi et per tout*.   If a co-tenant does not see fit to come in and occupy, the other still has the right to the enjoyment of the estate, and in such case the sole occupation of one is not an exclusion of the other.   Each tenant, being seized of each and every part and parcel of the estate, has a right to the use and enjoyment of it, and so long as he does not hold his co-tenant out, or in any way deprive him of the occupation of the estate, he exercises only a legal right, and receives nothing for which he is bound to account to his co-tenant."   *Badger vs. Holmes*, 6 Gray, 118.

By the common law there was no remedy by one tenant in common against the other taking the entire profits and by the Statute of Anne (4 and 5 Anne, Chap. 16, Sec. 27) an action of account might be maintained by one tenant in common against the other charging him, as bailiff, for receiving more than his share or proportion and it was necessary to show an actual receipt of rents and profits over and above his share thereof.   The English courts restrict the co-tenant's liability for accounting to money received from third parties and a majority of the States of the American Union adopt the same rule.   We understand that the opposite view obtains in Georgia, Virginia, Ohio, Rhode Island and possibly

in Vermont and New Jersey, where a tenant in possession is held accountable for profits made by his own labor out of the common estate more than his proportion in accordance with his title.   *See Izard vs. Bodine* (N. J.) reported in 69 Am. Dec. 596 ; *Early vs. Friend,* 16 Grat. 21 (Va.) reported in 78 Am. Dec. 649; *West vs. Meyer,* 46 Ohio, 71; *Hayden vs. Merrill,* 44 Vt., 336.

The view of the majority is thus expressed by Freeman in Co. T. & Par. Sec. 225: "But the decided preponderance of the authorities both in England and America, affirms the right of each co-tenant to enter upon and hold exclusive possession of the common property, and to make such profit as he can by proper cultivation or by other usual means of acquiring benefit therefrom, *and to retain the whole of such benefits,* provided that in having such possession, and in making such profits, he *has not been guilty of an ouster,* of his co-tenant, nor hindered the latter from entering upon the premises and enjoying them as he had a right to do.    The reasoning upon which these decisions, constituting the great bulk of the authorities on this subject, rests is :   That as each co-tenant has, at all times, the right to enter upon and enjoy every part of the common estate, this right cannot be impaired by the fact that another of the co-tenants absents himself or does not choose to claim his right to an equal and common enjoyment; that it would be inequitable to compel a co-tenant in possession to account for the profits realized out of his skill, labor and business enterprise when he has no right to call upon his co-tenant to contribute anything towards the production of these profits, nor to bear his proportion, when through bad years, failure of crops, or other unavoidable misfortune the use made of the estate resulted in a loss instead of a profit to the one in possession."    The following cases sustain this view :

*Peck vs. Carpenter,* 7 Gray, 283.

*Crane vs. Waggoner,* 27 Ind., 52.

*Shepherd vs. Richards,* 2 Gray, 424.

*Woolever et al. vs. Knapp,* 18 Barb., 265.

*Pico vs. Columbet*, 12 Cal., 414.

*Cook vs. Webb*, 21 Minn., 428.

*Kean vs. Connelly*, 25 Minn., 222.

*Hause vs. Hause*, 29 Minn., 252.

*Everts vs. Beach*, 31 Mich., 135.

*Campan vs. Campan*, 44 Mich., 31.

*Reynolds vs. Wilmet*, 45 Iowa, 693.

*Sears vs. Sellew*, 28 Iowa, 505.

*Blood vs. Blood*, 110 Mass., 547.

*Osborn vs. Osborn*, 62 Tex., 495.

*Creed vs. People*, 81 Ill., 565.

The following cases in our own Court show that an ouster is essential in the instances given :

*Nakuaimanu vs. Halstead*, 4 Haw., 42.

*Kaia vs. Kamaile*, 4 Haw., 352.

We hold upon authority that to charge a tenant in common with what profits he may make while in possession of the common estate or a part thereof an ouster of his co-tenant or what is equivalent must be shown.    Mere occupation is not sufficient.    Occupation is not necessarily exclusion.    Upon principle also we consider this to be the best view.    If the mere fact of occupation by a tenant in occupation, who wishes by his industry to obtain some profit from land in which he has an interest, would render him liable to a tenant who does nothing but lie by and see the land tilled and improved, it would be a serious discouragement to agriculture and business enterprise, and such lands would be very apt to lie idle.    No one could safely occupy and use such lands.    Partition would have to be resorted to in every case of such joint-ownership.

We come now to the question whether the facts of this case show an ouster by the plaintiff of the defendant.    We have seen that the actual occupation of the Waikapu Commons was of separate portions by each of the tenants in common.    Both Mr. Macfarlane, the stockholder, and Mr. W. H. Cornwell, the manager of the Waikapu Sugar Company, knew of the occupation by plaintiff from time to time as the land

of the common estate was occupied by plaintiff for sugar
culture. Both these gentlemen say that they never at any
time nor in any manner consented or agreed that Mr. Spreck-
els or the Hawaiian Commercial and Sugar Company should
fence in and take exclusive possession of any part of the
Waikapu Commons. And yet, while fully aware of this occu-
pation, neither of them ever objected to it or protested
against this action, nor denied the plaintiff's title to it, nor
asked to be let into possession and make use of the part so
occupied. In fact the Waikapu Sugar Company, it was
admitted, with its limited water supply could not have used
the land for cane culture. We remark here that all the
facts of the case certainly for a long period of time, are con-
sistent with an agreement for separate occupation, although
we do not consider such an agreement to be sufficiently
and clearly proved. The separate occupation was ami-
cable. The plaintiff corporation kept its cane fields fenced,
and if defendant's cattle broke into them they were re-
turned to defendant without charge for damage. A simple
arresting and impounding of these animals for trespass by
the plaintiff's company would have been sufficient to show an
ouster, and the breaking of the fences by defendant's com-
pany and letting their animals into the cane fields of plaintiff
would show that they objected to this use of the land and
claimed it. None of these things were done. All we have in
evidence are the mild efforts of Mr. Macfarlane to procure a
"settlement" of the matter from Mr. Spreckels. It has
been difficult for us to ascertain what this request for a "set-
tlement" meant. Mr. Macfarlane explains it by saying that
he meant compensation for the use and occupation of the
land by Mr. Spreckels' company. And he distinctly says
that he never really desired a partition of the estate. A re-
quest for a settlement could hardly be considered a claim for
owelty in the face of the avowal by Macfarlane that he did
not desire partition. But as we have seen, he would not be
entitled to such compensation under our view of the law,
unless he had demanded that his company be let into the use

of that part of the estate thus occupied and been refused, or was able to show facts from which an ouster could be found. He says he made no such formal request, excusing himself for the reason that his other business relations would suffer. He was a debtor to Mr. Spreckels or his sons in a very large amount and a hostile attitude in the matter of the Waikapu Commons would have made, in his opinion, a rupture of those relations; payment of his debts would be exacted, and this would entail loss, and perhaps ruin, to himself and his patrons. While regretting this unfortunate position, all we can say is that the Court cannot vary the law to suit his circumstances, and whatever be the reason for making no explicit demand for possession—a refusal to comply being an ouster—we do not find any such proved. Mr. Macfarlane weighed all his business interests, and if some outweighed those under consideration and prevented his taking the stand which the law required of him in order to enable him to have the redress he now seeks, it cannot now be helped. Hostile proceedings between these corporations did not begin until June, 1891; Mr. Macfarlane says that in 1886 or 1887 he had become freed from all his pecuniary obligations to Mr. C. Spreckels or the Spreckels brothers. Certainly there was nothing to prevent his making a demand for possession of the land occupied by plaintiff's corporation during this interval.

We therefore hold that no ouster has been shown in this case and the appeal is dismissed. The decree of the Chief Justice, which orders partition of the estate, but without an account from either party to the other, is affirmed.

*F. M. Hatch*, for plaintiff.

*A. S. Hartwell, C. L. Carter, Thurston & Frear*, for defendant.