[No. 40978-6-I. Division One. December 21, 1998.]

THOMAS YAKAVONIS, *Appellant*, v. SONJA TILTON, ET AL., *Respondents*.

*Sally M. Hyde*, for appellant.
*Thomas M. Ikeda*, for respondents.

COLEMAN, J. — This is the second time that we have been asked to review the trial court's determination concerning the partition and accounting of two parcels of real property owned by Thomas Yakavonis and Sonja Tilton as tenants in common. This court's earlier decision settled the dispute concerning the parties' ownership interests in the two parcels of real estate, finding that Yakavonis and Tilton were co-owners with equal interests in both properties. The case was remanded for an accounting of the costs and benefits incurred by the parties before partition. Yakavonis now appeals the trial court's accounting and finding that he was ousted from one of the parcels on January 1, 1997. We find that Yakavonis was ousted by the April 1, 1994 court decision that incorrectly declared that Yakavonis no longer had an ownership interest in the parcels. We therefore reverse the trial court's finding of ouster and remand with instructions to enter separate judgments for each parcel and to recalculate the accounting consistent with a finding that ouster occurred on April 1, 1994.

## FACTS

Yakavonis and Tilton ended a nine-year relationship in 1986. During the course of their relationship, they owned as tenants in common a number of residential rental properties. All but two of these properties were sold, with the parties equally dividing the proceeds. The two properties are referred to as parcels A and B. Parcel A is a house that was previously owned by Tilton and in which she quit-claimed a one-half interest to Yakavonis during their relationship. Parcel A was used as a rental during the relationship but, shortly after splitting up, Tilton moved into the house on parcel A. Parcel B was always used as a residential rental property, and the parties do not dispute the ac-

counting for parcel B.[1] The parties shared the income and losses from the rental property for tax purposes until 1988. In 1992, Yakavonis filed to partition the two properties.

The trial court originally entered an order quieting title in both parcels to Tilton and allowed a number of offsets against Yakavonis's interest in one of the parcels for expenses incurred by Tilton after their separation. The trial court entered a judgment for Tilton for $5,793.47 as a result of the offset exceeding the value of Yakavonis's interest in the property. Yakavonis appealed and in October 1995, this court held that Yakavonis retained a one-half interest in each of the two parcels and that "an accounting may be necessary to determine the appropriate amount of offset for expenses or benefits incurred by either party with respect to each parcel up until the time of partition." *Yakavonis v. Tilton*, No. 34513-3-I, slip op. at 8 (Wash. Ct. App. Oct. 9, 1995).

The trial court appointed a certified public accountant to prepare an accounting of the benefits received and costs incurred individually by Yakavonis and Tilton for each of the properties after their relationship ended. The trial court ruled that absent ouster or an agreement to the contrary, it was not proper to account for the benefit received by Tilton due to her living on parcel A and entered a final order of judgment in favor of Tilton in the amount of $6,097 for both properties. In ruling on motions for modification, the court, sua sponte, changed only the judgment amount to $8,459.50.

We first address the date of ouster and find that the court erred by not finding that Yakavonis was ousted as a result of its previous ruling that Tilton was the sole owner. Then we address Yakavonis's claim that an equitable remedy of a rental value offset is an appropriate defense to an occupying tenant's claim for contribution of expenses for the period before ouster. Finally, we note that the trial court should have kept the accounting of parcels A and B totally

---

[1] Consequently, other than modifying the accounting to provide for separate judgments for parcels A and B, the remainder of this opinion applies only to parcel A.

separate and that the trial court erroneously determined that Yakavonis was entitled to rent but was not responsible for expenses after ouster.

## DISCUSSION

██ ██ Yakavonis concedes that this court's previous ruling upholding the trial court's denial of his ouster claim precludes additional review of the finding that he was not ousted prior to the court's April 1, 1994 ruling. But, Yakavonis now argues that the April ruling denying him all right, title, and interest to parcel A constituted ouster. Ouster occurs when a cotenant obtains sole possession of the land that is adverse to the other cotenants, where the cotenant repudiates or disavows the relation of the cotenancy or where the tenant without possession is aware of actions by the tenant in possession that signify his or her intention to hold, occupy, and enjoy the premises exclusively. *Fritch v. Fritch*, 53 Wn.2d 496, 503, 335 P.2d 43 (1959). "In order for ouster to exist, there must be an assertion of a right to exclusive possession." *Cummings v. Anderson*, 94 Wn.2d 135, 145, 614 P.2d 1283 (1980). In addition, "where the property is not adaptable to double occupancy, the mere occupation of the property by one cotenant may operate to exclude the other." *Cummings*, 94 Wn.2d at 145.

The trial court set the date of ouster as January 1, 1997. While the record before this court is silent as to the court's reasoning for using that date, Tilton contends that January 1, 1997, signified the date that she was no longer willing to permit Yakavonis to occupy or rent out his portion of the residence. Yakavonis, however, focuses on the effect of the April 1994 order that found that he did not have an interest in parcel A. Because we agree that ouster occurred when the court determined that Yakavonis had no interest in the parcels, it is not necessary to resolve the dispute concerning when Tilton was unwilling to permit Yakavonis access to parcel A.

Tilton claims that the court's April 1, 1994 ruling did not

constitute an ouster because ouster requires a wrongful affirmative act by her and it was the court that erred in determining that Yakavonis had no interest in parcel A. We do not find this distinction persuasive. Tilton was the party that raised the issue and benefited, at least temporarily, from the trial court's ruling that she was the sole owner of parcel A. Thus, at least from the time of the trial court's 1994 ruling, Yakavonis was wrongfully dispossessed of his interest in parcel A. There can be no clearer pronouncement of a claim to sole possession of a piece of property than enlisting the court's assistance in quieting title in the property. Accordingly, we find that Yakavonis was ousted from parcel A on April 1, 1994, because Tilton, via the court action, repudiated the cotenancy and Yakavonis was aware of Tilton's intent to exclusively hold and occupy the parcel.

Next, we address the issue of whether Yakavonis, the nonoccupying cotenant, is entitled to charge rent or receive a rental value credit from Tilton, the occupying tenant. Separate analyses are required for the period before and after ouster. The general rule in Washington is that "in the absence of an agreement to pay rent, or limiting or assigning rights of occupancy, a cotenant in possession who has not ousted or actively excluded the cotenant is not liable for rent based upon his occupancy of the premises." *Cummings*, 94 Wn.2d at 145 (*citing Fulton v. Fulton*, 57 Wn.2d 331, 334-35, 357 P.2d 169 (1960). Thus, according to this statement, prior to ouster, there must be an agreement to pay rent in order for a nonoccupying tenant to receive rent from an occupying tenant. After ouster, the occupying cotenant owes the nonoccupying tenant rent. In this case, Yakavonis agrees that he is not entitled to recover rent prior to ouster but argues that the trial court erred by not permitting the defensive use of the rental value received by Tilton as an equitable remedy to offset her claim to apportion the property-related expenses.

Yakavonis emphasizes that using the rental value as a defensive offset is different from, and should not be

confused with, receiving rent as a result of ouster. Indeed, some states follow the rule that

> [W]hen, in a suit for partition . . ., a cotenant who has been in possession or use of the premises seeks to obtain contribution respecting improvements made, or amounts expended in protection or preservation of the property, the court, as incidental to the granting of such relief and by way of adjusting the rights of the parties, may charge the claimant, defensively, with at least a part of the reasonable value of his occupancy or use[.]

W. W. Allen, Annotation, *Accountability of Cotenants for Rents and Profits or Use and Occupation*, 51 A.L.R.2D 388, 454 (1957).

Yakavonis cites Connecticut, California, and Nevada authority that permits the use of rental value as a defensive offset against expenses in a partition action. *See Hackett v. Hackett*, 42 Conn. Supp. 36, 598 A.2d 1112, 1118 (1990); *Hunter v. Schultz*, 240 Cal. App. 2d 24, 49 Cal. Rptr. 315 (1966); *Lanigir v. Arden*, 85 Nev. 79, 450 P.2d 148 (1969). While each of these cases does indeed adopt the exception that permits the defensive use of the rental value received by the occupying tenant, we are not persuaded by their reasoning, which ignores the fundamental tenet of real property ownership that a cotenant is entitled to full possession.

Yakavonis further argues that Washington, without acknowledging it as such, has also adopted a rental value offset. *See McNight v. Basilides*, 19 Wn.2d 391, 407, 143 P.2d 307 (1943). In *McNight*, the heirs of a deceased cotenant requested partition of the property and an accounting of the income obtained by the defendant in possession. *McNight*, 19 Wn.2d at 392. After discussing at length the requirements for adverse possession among cotenants, as well as acknowledging the general rule that cotenants are not entitled to rent, the *McNight* court stated:

> No practical or reasonable argument can be advanced for allowing one in possession to reap a financial benefit by occupying property owned in common without paying for his personal

> use of that part of the property owned by his cotenants. The fairest method in cases in which the cotenant occupies and uses common property, instead of renting it out, is to charge him with its reasonable rental value.

*McNight*, 19 Wn.2d at 407. However, unlike the application of the exception proposed by Yakavonis, the *McNight* court permitted the rental value to exceed the amount of expenses. *McNight*, 19 Wn.2d at 408. Thus, it appears that *McNight* went beyond a defensive offset and extended the ability to recover rent to the preouster period.

Tilton contends that *McNight* does not create an exception for the defensive use of rental value during an accounting because the defendant in *McNight* was found to have actually excluded or ousted the plaintiffs from the property. *See Fulton*, 57 Wn.2d at 335 (stating that *McNight* is thoroughly consistent with the so-called majority rule "because the cotenants in that case were, in fact, excluded from the common property and their equal rights therein were denied"). However, the ease with which *Fulton* reconciles *McNight* is deceiving because after an extended discussion of precedent, the *McNight* majority expressly held that the evidence was insufficient to establish the claim that appellant made any adverse claim to the property and that the facts indicated that the occupying tenant's action of living on the property did not amount to adverse possession. *McNight*, 19 Wn.2d at 399. Even the dissent in *McNight* points out the majority's departure from established law that permitted the recovery of rent only upon a showing that the occupying tenant's possession was hostile to the interests of the nonoccupying cotenants. *McNight*, 19 Wn.2d at 409 (Mallory, J. dissenting). Thus, *Fulton's* statement interpreting *McNight* is not in accord with the *McNight* text. We are therefore confronted with conflicting Supreme Court authority on whether it is appropriate to use the rental value received by the occupying tenant to offset a nonhostile occupying tenant's request that nonoccupying tenants contribute to property-related expenses. Because *Fulton* was more recently decided than *McNight* and it directly addressed the issue of rental value

prior to ouster or exclusion of one cotenant by correctly applying well-established legal principles, we find it to be controlling.[2]

Moreover, while permitting a rental value offset is initially appealing as an equitable remedy, we find that to permit such a remedy is contrary to the basic rights of cotenancy ownership. Regardless of the percent of ownership, a cotenant has an equal right of possession with all other cotenants. 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE PROPERTY LAW § 1.28, at 58 (1995). Described in another way, "each tenant in common of a possessory estate is entitled to possession, equally with his cotenants, of all parts of the land at all times." STOEBUCK, at 58. Requiring an occupying cotenant to compensate nonoccupying cotenants for a right that he or she already has is contrary to the ownership benefit of possession. While Yakavonis goes to great length to distinguish between rent due after ouster and the equitable defense of a rental value offset prior to ouster, we find both Washington Supreme Court precedent and the attributes of real property ownership prevent the use of rental value to offset expenses where the occupying tenant's actions are not hostile to the nonoccupying cotenant's interests.

Thus, because this court's prior decision determined that Yakavonis was not ousted or excluded from the property prior to the trial court's 1994 ruling, the trial court correctly declined to charge Tilton for the rental value of the property during this period. However, because we hold that Yakavonis was ousted on April 1, 1994, we remand and instruct the trial court to correct the accounting to reflect the new date of ouster.

Finally, we address several miscellaneous issues. Yakavonis's request for an owelty lien is moot because both prop-

---

[2]We also note that a prominent legal scholar in discussing the conflict between *McNight* and *Fulton* has stated: "Presumably the latest authority controls, and the earlier decisions, if they are not overruled on the point by implication, are badly wounded. It appears likely, then, but not certain, that Washington now follows the majority position that the cotenant is not liable for rental value." 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE PROPERTY LAW § 1.31, at 72 (1995).

erties have been sold. Yet, the trial court should award separate judgments because the parties do not contest the accounting for parcel B and there is therefore no need to delay the satisfaction of this judgment while the parties resolve their disputes with respect to parcel A.

 Since a remand for a new judgment calculation based on the new ouster date of April 1, 1994, is necessary, we need not address the parties' stipulation that the court erred in adjusting the judgment upon reconsideration. Also, in an effort to preclude the need for the parties to appeal for a third time, we note that nonoccupying cotenants remain responsible for their share of the necessary property maintenance expenses after ouster. Thus, as both parties agree, the correct amount awarded Yakavonis after January 1, 1997, should have been $133.46 per month, which is half the difference between the rental value of $945 per month and the maintenance cost of $678.08.

We stop short of recalculating the appropriate judgment amount because both parties represented at oral argument that there was no dispute as to the accuracy of the values arrived at by the accountant. Thus, we believe that the parties and trial court, who are more familiar with the accounting, are in a better position to accurately apply the accountant's figures to our finding that ouster occurred on April 1, 1994.

In sum, we reverse the trial court's finding that ouster occurred on January 1, 1997, and find that ouster occurred on April 1, 1994. Accordingly, we remand to the trial court with instructions to recalculate the judgment. The parties should provide easily understandable figures that comply with this court's holdings that no allowance for rent or rental value for Tilton's use of the property will be allowed prior to the April 1, 1994 ouster of Yakavonis and that after ouster, Tilton will be charged rent at a rate of one-half the reasonable rental value of parcel A for the period in which she occupied the parcel. Yakavonis, as a co-owner, is responsible for his share of the necessary property maintenance expenses throughout his tenure of ownership. The accounting for parcel B is not modified, and the judgment

314

for parcel B should be separately entered from the judgment for parcel A.

BAKER and BECKER, JJ., concur.