LAW LIBRARY

**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

CATHERINE CURTIS, Plaintiff-Appellee, v.
JEFF DORN, Defendant-Appellant

NO. 28299

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 03-1-0103)

JUNE 17, 2010

NAKAMURA, C.J., REIFURTH AND GINOZA, JJ.

OPINION OF THE COURT BY REIFURTH, J.

This case involves the partition under chapter 668,
Hawaii Revised Statutes, of improved real property held by an
unmarried couple as tenants in common. Plaintiff-Appellee
Catherine Curtis (Curtis), the cotenant in possession (COTIP)
since January 1994, wishes to purchase the interest held by
Defendant-Appellant Jeff Dorn (Dorn), the cotenant out of
possession (COTOP), but the parties cannot agree on a purchase
price. On appeal, we hold that a COTOP who was not ousted from
the property, but from whom a COTIP seeks contribution for unpaid
maintenance and improvements, may be entitled to offset a
proportionate share of the property's rental value during the
COTIP's occupancy of the property.

Dorn appeals from the November 8, 2006 Second Amended
Judgment filed in the Circuit Court of the Fifth Circuit (circuit
court)[1] in favor of Curtis. The Second Amended Judgment ordered
Dorn to transfer to Curtis his interest in the home that Curtis
and Dorn owned as tenants in common in Kīlauea, Hawai'i, on the
island of Kaua'i (Kīlauea property), and directed Curtis to pay
$51,132.87 to Dorn.

On appeal, Dorn argues that the circuit court
reversibly erred by not crediting him with the rental value of

---

[1] The Honorable Kathleen N.A. Watanabe presided.

the Kīlauea property during the period that he was out of possession. Dorn also challenges several of the circuit court's amended findings of fact and conclusions of law.

The circuit court determined that it was precluded as a matter of law from considering whether Dorn was entitled to an offset for imputed rental income because Dorn had not been ousted from the property. We disagree with this legal conclusion. Thus, remand is appropriate so that the circuit court may apply the principles of law adopted herein in exercising its discretion.

For the reasons discussed below, we conclude that a COTOP who has not been ousted from the property may nevertheless be entitled to credit for a proportionate share of imputed rental income as an offset against a COTIP's claim for unpaid maintenance and improvement contributions. As a result, we vacate the judgment and remand the case to the circuit court.

I. BACKGROUND

A. The Proceeding

On July 29, 2003, Curtis filed a complaint with the circuit court requesting a termination of the "joint venture and/or partnership" entered into by Curtis and Dorn in order to purchase the Kīlauea property, and "a declaratory judgment of the amount due to [Dorn] from [Curtis], if any, for his share of the [Kīlauea] property." The complaint explains that "[s]ince the purpose of the venture was to purchase a residence for the parties, [Curtis] requests that she maintain the residence for herself and the daughter of the parties and pay [Dorn] the amount due, if any, for his partnership interest."

B. The Property

On June 28, 1993, Curtis and Dorn, who were never married to one another, entered into a joint venture through which they purchased, as tenants in common, the Hurricane Iniki-damaged Kīlauea property for $171,000. The parties made a down payment of $36,000, of which Curtis contributed $34,000 and Dorn $2,000. The balance of the purchase price was financed by the

seller.

Curtis, Dorn, and their daughter (Daughter) moved into the Kīlauea property and Curtis and Dorn shared the mortgage payments, insurance, and real estate taxes equally. The couple's relationship deteriorated and Dorn moved out in December 1993.

In June 1994, Curtis and Dorn obtained a $180,000 mortgage loan on the Kīlauea property, paid closing costs and the balance due to the seller of the Kīlauea property, and split equally the remaining $36,000.

In 1999, Dorn purchased another residence as "a first time home buyer" in the Kilauea Estates (Estates property) under the "Kilauea Estates Home Buyer Loan Program" (Estates loan program). Although living at the Estates property, Dorn stored personal items such as generators, surfboards, tools, etc., at the Kīlauea property, and would often return to the house to see Daughter.

Multiple estimates of the Kīlauea property's sale and rental value were introduced at trial. Appraiser Dennis Nakahara conducted an in-person appraisal at the request of both parties and estimated that the property was worth $540,000. Appraiser Jose Diogo estimated, without entering the residence, that the Kīlauea property was worth approximately $685,000. In a September 29, 2005 letter, realtor Peter Tegan stated, without viewing the property, that he would be "comfortable" listing it for $740,000. He also testified at trial that the property's current rental value would be between $1,800 and $2,100 per month.[2] Curtis' contractor, Eugene Lopez, testified that the interior and exterior of the property required extensive repairs.

C.   **Kīlauea Property Investment, Expenses And Revenues**
     1.   **Equity**

Curtis and Dorn purchased the Kīlauea property for $171,000, investing $34,000 and $2,000 respectively as a cash down payment, and leaving them mutually responsible for the

---

[2]   Tegan's rental value testimony was presented "as a lay person" and not an expert.

$135,000 unpaid balance to the seller. As a result, the circuit court calculated Curtis' equity interest as 59.4%, and Dorn's equity interest as 40.6%. The amount owing on the mortgage at the time of trial was $155,148.38.

### 2. Contributions To Property

In January 1994, the month after Dorn moved out, Curtis began paying the monthly mortgage payment of $1,258.59. She continued paying monthly payments for the next 11 years and 10 months, for a total of $178,719.78. Dorn did not make any mortgage payments during this period.

In addition to mortgage payments, the circuit court found that, from 1994 to 2004, Curtis contributed $23,219.94 toward home insurance, property taxes, and ongoing home expenses, whereas Dorn contributed a total of $1,421.00 during that same period. Finally, the circuit court found that Curtis and Dorn had contributed $6,862.00 and $29,476.00, respectively, to "fix up the property after purchase."

### D. Trial

The non-jury trial began on November 2, 2005. Curtis testified that after Dorn moved out of the Kīlauea property, Dorn did not demand or ask that he be allowed to return to the house and did not file any "legal proceedings" to obtain possession. Curtis also testified that the locks on the house had not been changed, and that Dorn had left voluntarily. Moreover, Dorn never requested that Curtis pay rent.

Exploring the circumstances surrounding Dorn's departure, Curtis testified that, over time, she and Dorn "just didn't get along," and that the relationship had become such that they "could not reside together in peace and . . . concord." Nevertheless, Curtis contended that Dorn could have remained at the Kīlauea property in the home's third bedroom.

When asked about his relationship with Curtis, Dorn testified that he and Curtis had "scuff[led] in the street in front of the house" and that Curtis had once reported him to the police. Dorn further testified that the relationship had become strained and bitter, so he "left."

E.     Findings Of Fact And Conclusions of Law

On November 22, 2005, the circuit court issued Findings of Fact (FOFs) and Conclusions of Law (COLs), and an order requiring Curtis to pay Dorn $50,882.87 for his interest in the Kīlauea property, and ordering Dorn to transfer his interest in the property to Curtis upon payment.  The circuit court concluded that Dorn had not been ousted, that Curtis' possession was amicable, and that Curtis was not accountable to Dorn for the reasonable value of Curtis' occupancy.

F.     Motion For Reconsideration

On December 2, 2005, Dorn filed a motion for a new trial or other relief pursuant to HRCP 59 and for amendment of FOFs and COLs pursuant to HRCP 52.  The motion focused on the court's alleged error in not allowing Dorn an offset of amounts reflecting the value of Curtis' use and occupation of the Kīlauea property while Dorn was out of possession.  The motion also challenged the court's conclusion that Dorn be credited for $29,476.00 in rehabilitation expenses despite Dorn's contention that he had demonstrated entitlement to "about $50,000."

On December 12, 2005, the circuit court issued the Judgment, the terms of which were consistent with the November 22, 2005 FOFs and COLs.  On December 21, 2005, the circuit court issued the Amended Findings of Fact and Conclusions of Law (Amended FOFs and COLs).[3/]

G.     Amended FOFs and COLs; Judgment

The circuit court concluded that the parties were entitled to a termination of their joint venture, and that Curtis should have the opportunity to purchase Dorn's interest in the Kīlauea property.  The circuit court further concluded that Curtis was a cotenant and, as such, was not accountable to Dorn

---

[3/]    The Amended FOFs and COLs differed from the initial FOFs and COLs in three principal respects.  First, it included a FOF noting that Dorn does not seek to be reimbursed or credited for the rental value of Daughter's occupancy of the property.  Second, it deleted a FOF concerning repair expenses incurred by Curtis.  Third, it explained the basis for the court's calculation of the parties' contribution to repairing the property after purchase.

for the reasonable value of her occupancy. Ouster was unavailable as a theory under which to receive credit for the value of Curtis' tenancy, the circuit court held, because "[t]he presumption is that possession is amicable," and "[p]roof of ouster between tenants in common must be of the most satisfactory nature and this burden was not met."

The circuit court explained that it would use the analysis employed by the Nevada Supreme Court in *Sack v. Tomlin*, 871 P.2d 298 (Nev. 1994), to determine the division of equity. First, the circuit court determined the current equity in the home by taking the Nakahara appraisal value of $540,000, and subtracted the amount of $155,148.38 that was owing on the mortgage, leaving a total of $384,851.62 in equity.

Second, the circuit court calculated each party's equity interest by dividing the original mortgage amount by two (i.e. $135,000 ÷ 2 or $67,500), then adding to that the amount of down-payment contributed (i.e. Dorn: $67,500 + $2,000 = $69,500[4]; Curtis: $67,500 + $34,000 = $101,500), and dividing that amount by the original purchase price (i.e., Dorn: $69,500 ÷ $171,000 = 40.6%; Curtis: $101,500 ÷ $171,000 = 59.4%), then multiplying those percentages by the $384,851.62 of total equity in the home. Curtis' share of equity was $228,601.26, and Dorn's was $156,139.73.

Third, the circuit court considered "any claims that one party may have against the other" (i.e., any difference in the parties' contributions to the property). The court appears to start from the implicit assumption that the parties were equally responsible for contributions to property, and that any variation from that equality should be addressed as an offset to the equity share calculated above. The court calculated each party's contributions to the property, including mortgage payments, the down payment, insurance, taxes, home expenses, and money spent on home repairs, and determined that Curtis had

---

[4]    The circuit court's calculation in the Amended FOFs and COLs reflects Dorn's share as $68,500. The error is inconsequential, however, as the subsequently derived equity percentage of 40.6% is mathematically correct (as though the number $69,500 had been used).

contributed $242,901.72, while Dorn had contributed $32,888.00; leaving Curtis with excess contributions of $210,013.72.

In order to equalize the parties' positions, the circuit court divided the difference by two and concluded that Dorn owed Curtis $105,006.86 to balance the contributions. The court then subtracted that amount from Dorn's equity ($156,139.73 - $105,006.86), and determined that Dorn was entitled to $51,132.87 for his share of the Kīilauea property.

The circuit court ordered Curtis to pay $51,132.87 to Dorn within sixty days, and Dorn to then convey his interest in the Kīlauea property to Curtis. The Second Amended Judgment was entered on November 8, 2006.

## II. STANDARDS OF REVIEW

### FOFs and COLs of the Circuit Court

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Leslie v. Estate of Tavares*, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks and citations omitted) (quoting *State v. Kotis*, 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999)).

COLs, on the other hand, are not binding on an appellate court and are freely reviewable for correctness under the right/wrong standard.

> [The appellate court] ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the

> trial court's FOFs and that reflects an application of the
> correct rule of law will not be overturned. However, a COL
> that presents mixed questions of fact and law is reviewed
> under the clearly erroneous standard because the court's
> conclusions are dependent upon the facts and circumstances
> of each individual case.

*Chun*, 106 Hawai'i at 430, 106 P.3d at 353 (internal quotation
marks, citations, and brackets omitted) (quoting *Ponce*, 105
Hawai'i at 453, 99 P.3d at 104).

**Equitable Relief**

"The relief granted by a court in equity is
discretionary and will not be overturned on review unless the
circuit court abused its discretion by issuing a decision that
clearly exceeds the bounds of reason or disregarded rules or
principles of law or practice to the substantial detriment of the
appellant." *Aickin v. Ocean View Invs. Co., Inc.*, 84 Hawai'i
447, 453, 935 P.2d 992, 998 (1997) (internal quotation marks,
citation, and brackets omitted).

## III. POINTS OF ERROR

Dorn asserts that "[t]he trial court erred in not
finding that a [COTOP] . . . is entitled to rental value of the
[COTIP] when the [COTIP] . . . seeks reimbursement . . . for
expenditures made in maintaining the property."

Furthermore, Dorn challenges the following Amended
FOFs:

> 6. DORN does not seek to be reimbursed or credited
> for the rental value, if any, of [Daughter]'s occupancy of
> the property as he acknowledges his parental responsibility.

> 7. DORN has made no written demand and has filed no
> action requesting possession of the property or alleging he
> has been denied use of the property. DORN has made no
> verbal demand requesting possession of the property or
> alleging he has been denied use of the property.

> . . .

> 19. DORN contributed $29,476.00 [5/] to fixing up the

---

5/      FOF 19 included a footnote stating that, "[t]his is the total amount
stipulated to by the parties as reflected in Exhibits D-A and D-B 14, plus ½ of
the cost of the cabinets, carpet and drywall."

property after purchase and CURTIS contributed $6,862.00 [6/] to fixing up the property after purchase.

. . .

26. The Court finds the value of the property to be $540,000.00, based on the jointly agreed upon, in-person appraisal by Dennis Nakahara.

Dorn also challenges the following Amended COLs, in relevant part:

3. CURTIS is a cotenant of the property and is not accountable to DORN for the reasonable value of her occupancy.

4. Mere occupation of the property by CURTIS does not constitute ouster. The presumption is that possession is amicable. The use by DORN to store property and the purchase by DORN of another residence in 1999 shows CURTIS's [sic] possession is with his agreement. Proof of ouster between tenants in common must be of the most satisfactory nature and this burden was not met.

5. The division of equity should be based on the percentage of contributions of the parties toward the purchase price adjusted by their subsequent contribution. The Court elects to use the analysis contained in Sack v. Tomlin, 871 P.2d 298 (Nev. 1994). The Sack court reviewed the case law and found that the equity should be divided by first determining the respective ownership interests of the parties, which determines the share of each party of the net proceeds. Next, any claims that one party may have against the other should be considered.

(Citations omitted).

Dorn raises two final points of error, contending that (1) he sought reimbursement or credit for the rental value of the Kīlauea property, but it was denied by the circuit court, and (2) he contributed approximately $50,000 to the Kīlauea property after it was purchased, not $29,476.00 as determined by the circuit court.

## IV. DISCUSSION

Partition is an action in equity, and we review that action under the abuse of discretion standard. *Kimura v. Kamalo*, 106 Hawai'i 501, 506, 107 P.3d 430, 435 (2005) (citing *AIG Hawai'i Ins. Co., Inc. v. Bateman*, 82 Hawai'i 453, 457, 923 P.2d 395, 399 (1996)). In partition actions, the circuit court has the power,

---

6/      FOF 19 included a further footnote stating that, "[t]his is the total amount of CURTIS' contributions based on DORN's testimony."

among other things:

> (4) To cause the property to be equitably divided between the parties according to their respective proportionate interests therein . . . .
>
> . . . .
>
> (7) To exercise any other power pertaining to a circuit court in a civil action.

Haw. Rev. Stat. § 668-7 (1993).

### A. Appellant Claims Entitlement To A Credit Reflecting An Offset For The Rental Value of Appellee's Occupancy

The circuit court, citing to *Haw. C. & S. Co. v. Waikapu S. Co.*, 9 Haw. 75 (Hawai'i Prov. Gov. 1893), concluded that Curtis was not accountable to Dorn for the reasonable value of her occupancy.

The majority rule is that, in the absence of an agreement to pay or ouster by the COTIP, a tenant in common is not liable, because of such occupancy alone, to a COTOP for rent or the use and occupation of the premises. *See, e.g., De Mello v. De Mello*, 24 Haw. 675, 676 (Hawai'i Terr. 1919); *Sack v. Tomlin*, 871 P.2d 298, 306 (Nev. 1994). The rule is premised on the rights of cotenants to occupy the premises as one of the incidents of a tenancy in common.

> As between tenants in common where all are entitled to the possession, the intent with which possession is taken is material, for a stranger having no title may enter land and exercise acts of ownership over it and leave little room to doubt that he thereby intends to oust the true owner. But a co-tenant may enter the whole or any part of the common estate as he has legal right to do, and the presumption of law is, when nothing more is done, that he intends to do nothing beyond the assertion of his right.

*Haw. C. & S.* Co., 9 Haw. at 80.

Dorn contends that an exception from the rule is warranted because (1) he was "constructively ousted" from the Kīlauea property, and (2) Curtis seeks contribution from Dorn for funds expended for maintenance or betterment of the property.

### 1. Appellant was not ousted

Dorn contends that the circuit court erred in not awarding him the rental value of Curtis' occupancy of the Kīlauea

property because he was "constructively ousted."[7] Specifically, Dorn contends that he was constructively ousted from the Kīlauea property because his relationship with Curtis "had become so strained and bitter that the two could not reside together in peace and concord[.]" Hawai'i has not explicitly adopted or applied the concept of "constructive ouster," and we determine no need to do so in light of our analysis.

The circuit court does not explicitly state that Dorn was not ousted. We read Amended COLs 3 and 4 together, however, as implicitly reaching that conclusion, and we hold that the circuit court did not err in concluding that Dorn was not ousted.

The circuit court is correct that mere occupation of the property by Curtis does not constitute ouster. Hawai'i law does not assume that a vacating cotenant has been ousted. In disputes between cotenants, there is a presumption that the COTIP "does not occupy the premises adversely to his cotenants but in common with them." *Redfearn v. Kuhia*, 53 Haw. 378, 381, 494 P.2d 562, 564 (1972). "This presumption may be overcome only by conduct of one cotenant which constitutes an ouster or disseisin of the other cotenants." *Id.*

The Hawai'i Supreme Court has defined ouster as the "wrongful dispossession or exclusion from real property of a party who is entitled to the possession." *Haw. C. & S. Co.*, 9 Haw. at 80. In discussing ouster in the context of adverse possession, the Court has held that "ouster must be (1) actual, meaning a physical dispossession[,] or (2) its equivalent: a demand for possession by the cotenant out of possession and a refusal by the cotenant claiming by reason of adverse possession." *Redfearn*, 53 Haw. at 381-82, 494 P.2d at 564 (internal quotation marks omitted).

The record clearly shows that Dorn was not physically dispossessed of the Kīlauea property, nor did he make a demand

---

[7] The Hawai'i Supreme Court has held that when a COTOP is ousted, he or she is entitled to "something for the exclusive use and occupation of the premises" by the COTIP, but even that amount is ultimately a matter of equity. *Nahaolelua v. Kaaahu*, 10 Haw. 662, 666-67 (Hawai'i Rep. 1897) ("The amount of the compensation to be allowed for the use and occupation is . . . entirely uncertain.").

for possession, much less was there ever a demand for possession that was refused. To support his claim of ouster, Dorn cites to cases that recognize "constructive ouster" in the marital dissolution context. For, example, Dorn cites to *Olivas v. Olivas,* 780 P.2d 640 (N.M. Ct. App. 1989), wherein the Court of Appeals of New Mexico applied the concept of "constructive ouster" in lieu of "actual ouster." The court explained the rationale for employing "constructive ouster" in the marital dissolution context, stating:

> Applying the notion of constructive ouster in the *marital context* is simply another way of saying that when the emotions of a divorce make it impossible for spouses to continue to share the marital residence pending a property division, the spouse who-often through mutual agreement-therefore departs the residence may be entitled to rent from the remaining spouse. . . . .
>
> Common law precedents support the proposition that the remaining *spouse* should pay rent to the cotenant when both cannot be expected to live together on the property. For example, when it is impractical for all cotenants to occupy the premises jointly, it is unnecessary that those claiming rent from the cotenant in possession first demand the right to move in and occupy the premises.

*Id.* at 643 (emphasis added). The *Olivas* court, however, concluded that the appellant-ex-husband was not ousted, but rather that he voluntarily left the home. *Id.* at 644.

Hawai'i courts have not recognized the concept of "constructive ouster." In describing ouster, however, the Hawai'i Supreme Court has stated that:

> An ouster is the wrongful dispossession or exclusion from real property of a party who is entitled to the possession. . . . There must be stronger evidence to prove that one tenant has ousted another, than to prove that a person having no right to the possession has ousted the owner. *The proof of ouster between tenants in common ought to be of the most satisfactory nature.* The law will deem the possession amicable until the tenant out of possession has in some method been notified that it has become hostile.

*Haw. C. & S. Co.,* 9 Haw. at 80 (emphasis added). Thus, as the circuit court correctly noted, proof of ouster must be of a "most satisfactory nature."

Here, although the circuit court heard testimony from both Curtis and Dorn that they could no longer reside in peace and concord, there was also testimony that Dorn could have moved into the Kīlauea property's third bedroom, that at all times Dorn

had personal possessions stored at the property, that Dorn would visit the property to see Daughter, and that Dorn bought another home in 1999 that required him to stay at that property. Thus, it cannot be said that the circuit court heard evidence of such a "satisfactory nature" that it would overcome the presumption that Curtis occupied the Kīlauea property in a permissive manner. *Id.* Accordingly, the record supports the circuit court's implicit conclusion that Dorn was not ousted from the Kīlauea property.

### 2. The fact that the COTOP was not ousted does not preclude a defensive rental offset

The general rule of cotenancy, adopted by the Hawai'i Supreme Court, holds that a COTIP is not obligated for rent to a COTOP unless there is an ouster or an agreement holding otherwise:

> The prevailing doctrine, which we adopt, is that where one tenant in common uses and occupies the whole of the common property without excluding his cotenants and without any demand from them for possession, and refusal on his part, in the absence of any agreement to pay rent, he is not liable to his cotenants for the use and occupation of the common property, and since the possession of one joint tenant, or tenant in common, is the possession of all, and all are equally entitled to the use and enjoyment of the property, it follows as a general rule that one tenant cannot maintain an action at law against his cotenant in respect of the common property unless he has been disseized or ousted therefrom.

*De Mello*, 24 Haw. at 676; see *Lanigir v. Arden*, 450 P.2d 148, 149-50 (Nev. 1969); *Williams v. Sinclair Refining Co.*, 47 P.2d 910, 912 (N.M. 1935) ("[I]t is a well-settled principle of the common law that the mere occupation by a tenant of the entire estate does not render him liable to his co-tenant for the use and occupation of any part of the common property.").

It is also commonly recognized, however, that a COTOP may request rental reimbursement as an offset when a COTIP affirmatively seeks contribution from the COTOP for improvement or maintenance expenditures made by the COTIP. "When a [COTIP] seeks contribution for amounts expended in the improvement or preservation of the property, that claim may be offset by [the COTOP] by the reasonable rental value of the use of the property by the [COTIP] to the extent it has exceeded his or her

proportionate share of ownership." *Adkins v. Adkins*, 595 So.2d 1032, 1035 (Fla. Dist. Ct. App. 1992); *see* 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §§ 51, 57 (2005).

Many jurisdictions allow COTOPs a defensive offset against both maintenance-related and improvement-related contributions in non-ouster cases.[8] *E.g.*, *Esteves v.* Esteves, 775 A.2d 163, 165 (N.J. Super. Ct. App. Div. 2001); *Lanigir*, 450 P.2d at 149-50; *Clark v. Dady*, 131 S.W.3d 382, 390 (Mo. Ct. App. 2004); *Janik v.* Janik, 474 N.E.2d 1054, 1058 (Ind. Ct. App. 1985); *Gilleland v. Meadows*, 351 S.W.2d 656, 658 (Tex. Civ. App. 1961); *Fundaburk v. Cody*, 72 So.2d 710, 718 (Ala. 1954); *Henry v. Steward*, 250 S.W.2d 527, 528-30 (Mo. 1952); *Winn v. Winn*, 269 N.W. 376 (Neb. 1936).

Under this apportioned rental offset rule, even though a COTOP cannot seek the rental value of a cotenant's possession of the property "at law," *see De Mello*, 24 Haw. at 676, when a COTIP invokes equity to obtain improvement-related or maintenance-related contributions from a cotenant, "the court, as incidental to the granting of such relief and by way of adjusting the rights of the parties, may charge the claimant, defensively, with at least a part of the reasonable value of his occupancy or use[.]" *Hunter v. Schultz*, 49 Cal. Rptr. 315, 320 (Cal. Dist. Ct. App. 1966) (quoting 51 A.L.R.2d 388, 454).[9]

We concur with those jurisdictions and hold that a court in equity, in a partition action not involving ouster or agreement, has the discretionary authority to allow an

---

[8]    Many courts use the terms "maintenance" and "improvement" interchangeably or without any apparent regard to their difference, while others use words such as "betterment" and "preservation." Some jurisdictions permit offset against improvement expenses, but not maintenance expenses, while other jurisdictions limit the improvement expenses against which an offset may be made. Generally speaking, improvement/betterment involves the material enhancement of the property, while maintenance/preservation involves basic expenses, such as mortgage payments, insurance, real property taxes and ordinary wear and tear.

[9]    Not all jurisdictions follow this exception. Some jurisdictions allow no rental value offset under any circumstances. *See Kline v. Kline,* 581 A.2d 1300, 1310 (Md. Ct. Spec. App. 1990); *Yakavonis v. Tilton*, 968 P.2d 908 (Wash. Ct. App. 1998). Others allow offsets only against claims for improvements. *See Sack v. Tomlin*, 871 P.2d 298 (Nev. 1994); *Chance v. Kitchell* 659 P.2d 895, 897 (N.M. 1983).

apportioned defensive rental offset against maintenance-related and improvement-related contributions, to the extent that the "reasonable rental value of the use of the property by the COTIP . . . . has exceeded his or her proportionate share of ownership." *Adkins*, 595 So. 2d at 1035. "He who seeks equity must do equity." *Adair v. Hustace*, 64 Haw. 314, 321, n. 5, 640 P.2d 294, 300, n. 5 (1982) (internal quotation marks omitted).

The apportioned rental offset exception is the counterpart of the equity that the court exercises in allowing the COTIP credit for unreimbursed maintenance and improvement expenditures, and is not inconsistent with prior Hawai'i case law.[10/] The analysis focuses on whether one cotenant has a disproportionate share of the benefits or the burdens. An offset could be warranted because "if one cotenant enjoys a disproportionate share of the benefits, the other cotenants must be compensated[.]" *Massey v. Hrostek*, 980 A.2d 768, 775 (Vt. 2009) (internal quotation marks omitted); *see also Parker v. Lambert*, 206 S.W.3d 1, 5 (Tenn. Ct. App. 2006). The party seeking the rental offset has the burden of presenting evidence of the property's rental value. *Esteves*, 775 A.2d at 165.

We do not decide here whether it was correct for the circuit court to utilize the down payment amounts to determine the parties' equity percentages, and then also to include the same as contributions to be equalized, whether the circuit court was correct in assuming equal responsibility for each of the cotenants for the total expenses when the court also concluded

---

[10/]    In *Nahaolelua*, a partition action arising in the context of an ouster, the Hawai'i Supreme Court commented that "compensation for use and occupation should be allowed only for a period not exceeding . . . the period for which rents and profits could be recovered at law[.]" 10 Haw. at 666. In addition, the court held that a tenant in common who has made improvements on a good faith belief that he was the sole owner, is entitled to an allowance for the value of the improvements upon partition. *Id.* at 662.

We do not read the *Nahaolelua* comment concerning compensation for use and occupation as extending to non-ouster cases. In an ouster case, the COTOP is entitled to recover for use and occupation without regard to whether the COTIP first seeks expense-related contribution. *Yakanovis*, 968 P.2d at 911. In the non-ouster situation, on the contrary, the COTOP is already limited to an offset. Similarly, *Nahaolelua's* holding that a COTOP gets no part of a COTIP's improvement is limited, we believe, to the case where improvements have been made on the good faith belief that the COTIP was the sole owner.

that the parties' equity percentages were unequal, or whether the contributions recognized for improvement and expenses were appropriate. Nor do we consider whether the initial sale price of the Kīlauea property was anything other than $171,000.[11/] Finally, we do not determine whether all of the contributions should be allocated on the same percentage basis, as the circuit court did here.

We do not decide these issues because they have not been raised on appeal. Although Dorn filed a motion for new trial with the circuit court, neither he nor the Curtis raised these issues at the time, nor have they raised them on appeal; thus, they are not properly before this court. *Kawamoto v. Yasutake*, 49 Haw. 42, 45, 410 P.2d 976, 978 (1966); *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.*, 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002).

Our holding is limited to adopting the principle that a defensive offset is available in a non-ouster partition case against maintenance-related and improvement-related contributions being required of the COTOP. Ultimately, as the Hawaiʻi Supreme Court has said, "awards should be made according to the principles above stated only when no injustice would be done thereby." *Nahaolelua*, 10 Haw. at 667. It is the province of the circuit court to determine if such an offset is equitable under the circumstances of the case, and, if so, the reasonable rental value of the COTIP's use of the property, the extent to which that value has exceeded the COTIP's proportionate share of ownership, and any other equitable factors that apply in determining a fair allocation of the property's benefits and burdens.

In sum, we conclude that the fact that a COTOP has not been ousted from the property does not preclude the circuit court

---

[11/]    Amended FOF no. 3 states that the original purchase price of the Kīlauea property was $171,000, while at the beginning of trial, the parties stipulated that the price was $171,500. The finding, however, has not been challenged on appeal, and "unchallenged factual findings are deemed to be binding on appeal . . . . [and] an appellate court cannot . . . *sua sponte* revisit a finding of fact that neither party has challenged on appeal." *Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002).

from awarding the COTOP a defensive rental offset under the circumstances outlined above. Because the circuit court applied a different legal principle, we remand so that the principles set forth above may be utilized in the exercise of the circuit court's discretion.

As noted, the circuit court retains significant discretion in determining whether and to what extent a rental offset shall be awarded within the legal framework we have announced. On remand, we direct the circuit court to adopt findings of fact and conclusions of law addressing whether Dorn is entitled to offset a share of the rental value during Curtis' occupancy of the Kīlauea property against Curtis' claims for contribution, and the basis for the amount of any offset awarded.

B. The Circuit Court's Amended FOFs and COLs And The Remaining Points Of Error On Appeal

Dorn challenges several of the circuit court's Amended FOFs and COLs, along with two other undifferentiated points of error. The bulk of these points are subsumed in and addressed in the discussion above, and the remainder are either unsupported or made moot by our decision here. As a result, they will not be addressed separately.

V. CONCLUSION

For the reasons discussed herein, the November 8, 2006 Second Amended Judgment is vacated and the case is remanded to the circuit court for further proceedings.

On the briefs:

Jeff Dorn
Defendant-Appellant, pro se.

Joe P. Moss
for Plaintiff-Appellee.

17