# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

BIRNEY DEMPCY and MARIE
DEMPCY, husband and wife, and their
marital community,

                    Appellants,

        v.

CHRIS AVENIUS and NELA AVENIUS,
husband and wife, and their marital
community; JACK SHANNON, an
individual; and RADEK ZEMEL, an
individual,

                    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 73369-9-I

ORDER WITHDRAWING AND
SUBSTITUTING OPINION

Respondents, Chris Avenius, Nela Avenius, Jack Shannon, and Radek Zemel, have filed a motion for reconsideration. Appellants, Birney Dempcy and Marie Dempcy, have filed a response. A panel of the court has considered the motion and determined that it should be granted and that the previous opinion should be withdrawn and a substitute unpublished opinion should be filed. Now, therefore, it is hereby

ORDERED that the opinion filed on December 19, 2016 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

DATED this 3rd day of April, 2017.

FILED
2017 APR -3 AM 11:48
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 APR -3 AM 11:48

COURT OF APPEALS DIV 1
STATE OF WASHINGTON

FILED

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BIRNEY DEMPCY and MARIE DEMPCY, husband and wife, and their marital community,

Appellants,

v.

CHRIS AVENIUS and NELA AVENIUS, husband and wife, and their marital community; JACK SHANNON, an individual; and RADEK ZEMEL, an individual,

Respondents.

No. 73369-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 3, 2017

APPELWICK, J. — Partition of a common area created by the deeds of the adjacent properties was not available to the trial court as a remedy for the owners' inability to agree on the use or maintenance of the common area. However, the declaratory judgment that the CC&Rs governing the neighborhood require at least two owners to vote in favor of an assessment for extraordinary maintenance of the common property was proper. The deeds do not require perpetual maintenance of a tennis court on the common property. The Aveniuses are entitled to attorney fees on appeal related to the CC&R claims. We reverse in part and remand.

## FACTS

Birney and Marie Dempcy, Chris and Nela Avenius, Jack Shannon, and Radek Zemel own the four properties making up the Pickle Point neighborhood in Bellevue. Each of the neighbors owns a one-fourth interest in a common property located in the neighborhood.

The neighborhood is governed by a declaration of protective covenants, restrictions, easements, and agreements (CC&Rs). The CC&Rs provide restrictions on how the Pickle Point properties can be used. The CC&Rs also establish an architectural control committee (ACC) consisting of one member for each of the properties. And, the CC&Rs provide that each owner has the right to use and enjoy the common property according to its nature and subject to the restrictions within the CC&Rs.

The common property consists of a lawn, a retaining wall, landscaping, and access roads. The common property also contains a tennis court. The tennis court has fallen into a state of disrepair. The Dempcys have been concerned about the condition of the tennis court since at least 2003. Their repeated efforts to persuade the other owners to refurbish the tennis court were unsuccessful.

In 2013, the ACC discussed the tennis court at several meetings. The Dempcys once again urged the other owners to agree to repair the tennis court. But, the other owners voted against repairing the tennis court. The ACC ultimately voted against having a tennis court or any athletic court in the common property.

2

The Dempcys sued the Aveniuses, Shannon, and Zemel (collectively the Aveniuses). They sought a declaratory judgment that the Aveniuses are obligated to maintain the tennis court and contribute to the cost of maintenance.

Both sides moved for summary judgment. The trial court denied the Dempcys' motion for summary judgment, but granted the Aveniuses' motion for partial summary judgment. It ordered the common property to be partitioned. At the Aveniuses' request, the court also entered a declaratory judgment that only two votes are necessary to approve special assessments for extraordinary maintenance costs of repairing the common property and tennis court. The court also awarded attorney fees to the Aveniuses. The Dempcys appeal.

## DISCUSSION

The Dempcys assert that the exceptions to the right of partition apply here, so the trial court erred in ordering partition. They argue that the trial court erroneously interpreted the CC&Rs as requiring the votes of only two owners to approve special assessments for extraordinary maintenance of the common property. Further, the Dempcys contend that by interpreting the CC&Rs in this way, the trial court interfered with their right to maintain the common property themselves and seek contribution from the other co-owners. They claim that the trial court erred in concluding that the CC&Rs bar their suit against Shannon for damages. And, the Dempcys challenge the award of attorney fees to the Aveniuses. The Aveniuses, in turn, request attorney fees on appeal.

3

On an appeal of a summary judgment order, this court engages in the same inquiry as the trial court. Ellis v. City of Seattle, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). We consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Tran v. State Farm Fire & Cas. Co., 136 Wn.2d 214, 224, 961 P.2d 358 (1998). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Ellis, 142 Wn.2d at 458. If reasonable minds could draw different conclusions from the undisputed facts, summary judgment is not appropriate. Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wn.2d 282, 295, 745 P.2d 1 (1987).

The interpretation of a restrictive covenant is a matter of law reviewed de novo. Bauman v. Turpen, 139 Wn. App. 78, 86, 160 P.3d 1050 (2007). The primary task in reviewing a restrictive covenant is to determine the intent of the drafters and the purpose of the covenant at the time it was drafted. Id. The drafters' intent is to be determined by examining the clear and unambiguous language of the covenant. Id. at 88-89.

I.  Partition of the Common Property

The Dempcys contend that the trial court erred in ordering the common property to be partitioned. They argue that the exceptions to the right of partition apply here.

RCW 7.52.010 provides that one or more tenant in common may bring an action to partition real property. If partition cannot be made without great prejudice to the owners, a tenant in common may bring an action for sale of the commonly owned property or a part of it. Id. In Washington, the right of partition by a tenant in common has been described as absolute. Hamilton v. Johnson, 137 Wash. 92, 100, 241 P. 672 (1925). Tenants in common have the right to partition the property, so long as there is no agreement to hold the property in a tenancy in common for a definite and fixed time. Id. It is no defense to partition that partition would be inconvenient for the other owners or result in a depreciation in value of the owners' property interests. Id.

But, the right to partition is subject to several exceptions. Carter v. Weowna Beach Cmty. Corp., 71 Wn.2d 498, 502, 429 P.2d 201 (1967). The right to partition

> is not available where a cotenant, by his own acts, is estopped or has waived his right by express or implied agreement, or where his cotenant's equitable rights will be minimized or defeated[,] or in violation of a condition or restriction imposed upon the estate by one through whom he claims.

Id. (citations omitted). In Carter, the purchasers of 81 residential lots all received a 1/81 part of the adjoining tract. Id. at 498-500. Each deed provided,

> "Together with an undivided one-eighty-first parts and share of, in and to the private community Park, being the West 715 feet and water thereon of government lots one, two, three and four, on the west shore of Lake Sammamish, in said County and State, all of said four lots having been subdivided and shown on unrecorded plat and designated as WEOWNA BEACH, all subject, however, to the following covenants, reservations and restrictions, to-wit:
>
> "The grantee covenants with grantors that this deed and possession of the premises hereby conveyed is accepted subject:

5

"  . . . .

"(2) To the joint and common use, pleasure and benefit of said private community park by the several owners of the remaining 81 tracts in said Weowna Beach, including all water thereon, and on that part of said Tract hereby conveyed lying West of said proposed County Road, and the right to lay and maintain service water pipes for the equal distribution of water to the several owners of said 81 Tracts, under such arrangement and plan as a majority of such owners shall determine, including the right to form a water district under the laws of the State of Washington."

Id. at 500 (emphasis omitted). The Washington Supreme Court held that residents could not sell their lots free and clear of this deed restriction, because they purchased their properties with full knowledge of the rights of other purchasers. Id. at 502. They could not later claim the absolute right to sell the property in a way that would destroy those rights and violate their own agreement. Id.

Like in Carter, the Pickle Point common area was created by the same deeds that created the four residential properties. The original owners of the Pickle Point neighborhood divided the area into five parcels by recording four statutory warranty deeds. These deeds transferred title to the four residential properties. The owners of the four residential properties each received an undivided one-fourth interest in the common property. By these deeds, the grantors created equitable interests in the common area that inure as a fact of owning a residential property. The existence of these equitable interests is bolstered by the language of Section 5.1 of the CC&Rs, which provides, "Each owner of a parcel shall have a right to use and enjoy the common property according to the nature of that property and subject to the restrictions contained in this Declaration." The co-

6

owners' equitable interests would be defeated if the common property were to be partitioned without the agreement of all four co-owners.[1] The trial court erred in ordering the common property to be partitioned.

## II.    Maintenance of the Common Property

The Dempcys also challenge the trial court's declaratory judgment that two votes of the ACC are necessary for decisions regarding special assessments for extraordinary maintenance costs of the common property. And, they assert an independent right to maintain the common property and then seek contribution for the expenses.

The CC&Rs plainly delegate the task of maintaining the common property to the ACC. Section 5.3 instructs the ACC to establish rules, hold meetings, and impose regular and special assessments for the common property. Section 5.5 requires the ACC to, once a year, "determine the amount of money necessary for the ordinary maintenance of the common property and the operation of the Committee." This amount is to be equally divided amongst the Pickle Point owners. And, Section 5.6 governs special assessments. It provides,

> If the Committee determines that a special assessment is necessary for the extraordinary maintenance of or capital improvements to the common property, the Committee shall send a notice of special assessment to the owners of all parcels. This notice shall include a statement of the reasons such an assessment is necessary, the amount to be assessed, the method of payment proposed by the Committee, and the date and place for a meeting to discuss such a special assessment. This meeting shall be held no sooner than thirty (30) days from the date of the notice of special assessment. The

---

[1] The division or disposition of the common property requires the agreement of all co-owners.

meeting will be conducted according to the rules adopted by the Committee, and the owner of each parcel shall be entitled to one vote for each parcel. Approval of a special assessment shall require consent of 50% of the Parcels excluding Parcel 5.

By authorizing the ACC to determine the amount necessary for ordinary maintenance, decide when a special assessment for extraordinary maintenance is necessary, and vote to assess the co-owners for extraordinary maintenance costs, the CC&Rs delegate authority over maintenance decisions to the ACC. Under the terms of the CC&Rs, the ACC may exercise this authority so long as at least two of the four co-owners consent.

The importance of the property being maintained is highlighted by the CC&Rs. Section 5.1 protects the co-owners' rights to use and enjoy the property according to its nature. And, Section 6.1 states, "Any owner of property within the property subject to this Declaration shall have the right to enforce the Covenants contained in this Declaration through an action at law or in equity." Where the ACC has not discharged its maintenance duties in a reasonable and timely manner, an owner may ask the court to enforce the maintenance obligation, as the Dempcys have done. The CC&Rs, however, do not authorize self-help.[2]

---

[2] While the Dempcys contend that self-help is available, they rely only on cases that did not involve a committee or any allocation of responsibility amongst the co-owners. See Yakavonis v. Tilton, 93 Wn. App. 304, 307, 968 P.2d 908 (1998); In re Estate of Foster, 139 Wash. 224, 225-26, 246 P. 290 (1926); Womach v. Sandygren, 107 Wash. 80, 81-82, 180 P. 922 (1919). Here, the CC&Rs govern maintenance of the common property, and they do not authorize self-help.

The heart of this dispute is whether the tennis court must be maintained in perpetuity.[3] Three of the original deeds contained a covenant[4] pertaining to the common property:

> AND SUBJECT TO: the assumption of and the agreement by Grantees to do the following:
>
> A.     Grantees agree to pay one-fourth (1/4) of the cost of developing and maintaining the common area described above under Parcel B as follows:
>
> 1.     All landscaping in the common area; and
>
> 2.     The construction of a tennis court to commence not sooner than January 1, 1970, and not later than January 1, 1973. The date of commencement of construction to be decided by majority vote of the owners of the four parcels of land served by said common area. In event the vote is two for and two against, the results are to be considered a majority for commencement of construction.

This covenant does not expressly require that a tennis court, once constructed, must remain on the property perpetually (or until the co-owners amend their deeds to remove reference to a tennis court). Nor do we think such a burden is to be inferred. The CC&Rs contemplate that extraordinary maintenance or capital improvements to the common area may become necessary or desirable. They delegate responsibility for such decisions and necessary assessments to the ACC with no restrictions relative to the tennis court. The removal of the tennis court or construction of another recreational facility would qualify as an extraordinary

---

[3] The parties did not brief this issue. But, at oral argument, the Dempcys argued that the covenant contained in three of the four deeds requires the co-owners to maintain a tennis court on the common property indefinitely, unless all four co-owners agree to the contrary.

[4] The deed to what is now the Zemel property did not contain this covenant.

maintenance or capital improvements to the common property. Such decisions are subject to approval of two votes of the ACC. We hold that the deeds do not require that a tennis court must exist on the common property in perpetuity.

We leave to the trial court the question of whether the ACC has exercised its authority to eliminate the tennis court. Whether the tennis court is to be maintained or replaced, all owners are entitled to have the action taken in a reasonable and timely manner, overseen by the trial court if necessary. It would be no more acceptable for the ACC to leave the common property in a state of perpetual construction than to leave it in a state of perpetual disrepair. We remand to the trial court for further proceedings regarding the ACC's maintenance of the common property.

## II.    Immunity from Liability under the CC&RS

The Dempcys assert that Shannon interfered with their contract to repair the tennis court. They argue that the trial court erred in dismissing their suit against Shannon for damages.

Three members of the ACC convened[5] on July 23, 2013 to discuss the future of the common property. During that meeting, the ACC interpreted the CC&Rs as meaning that work done to the tennis court beyond the regular upkeep requires a special assessment vote for approval. And, all three attending members voted against having a tennis court or any athletic court in the commons.

---

[5] Shannon, Zemel, and Chris Avenius were present. The meeting minutes state that an attempt to call the Dempcys was unsuccessful.

10

The Dempcys proceeded to contract with Northshore Paving to repair the tennis court. Shannon learned of this contract. He sent Northshore Paving a letter informing the company that the ACC had decided not to move forward with repairs to the tennis court until a long range plan is developed and approved. Shannon signed the letter with his name and, underneath, "Chair, Pickle Point Association."

Section 3.6 of the CC&Rs provides that members of the ACC cannot be held personally liable for the actions or decisions of the ACC. The facts show that Shannon was writing on behalf of the ACC, after a meeting of the ACC during which the ACC voted not to pursue improvements on the tennis court. Therefore, we conclude that the CC&Rs bar the Dempcys' suit for damages.

## III. Attorney Fees

The CC&Rs provide that the prevailing party in any action brought to enforce the CC&Rs is entitled to attorney fees. Applying this provision, the trial court ordered the Dempcys to pay the Aveniuses' reasonable attorney fees, court costs, and other expenses of the litigation relating to the CC&Rs.

Attorney fees are not recoverable for the partition issue, on which the Dempcys have prevailed. See Hamilton v. Huggins, 70 Wn. App. 842, 851-52, 855 P.2d 1216 (1993). Nor are fees available to either side for the tortious interference issue. The Dempcys did not make this claim to enforce the CC&Rs. Instead, they argued that the Aveniuses intentionally interfered with their contract to maintain the tennis court. They contended that this claim pertained to actions taken without the authority of the ACC.

The remainder of the claims did seek to enforce the CC&Rs. These claims related to the ACC's authority and obligation to maintain the common area. Because we uphold the trial court's declaratory judgment regarding the ACC's authority over maintenance of the common area, the Aveniuses are the prevailing party on the claims related to the CC&Rs. Accordingly, we affirm the trial court's award of attorney fees to the Aveniuses. And, we conclude that the Aveniuses are entitled to attorney fees on appeal related to the CC&R claims, subject to compliance with RAP 18.1(d).

We reverse the trial court's partition order and remand for proceedings consistent with this opinion.

WE CONCUR: